676 A.2d 652

**Constance B. FOSTER, Insurance Commissioner of the Commonwealth of Pennsylvania**

v.

**The MUTUAL FIRE, MARINE AND INLAND INSURANCE COMPANY.**

**Appeal of The CEDENTS COMMITTEE OF POLICYHOLDERS.**

Supreme Court of Pennsylvania.

Argued May 4, 1992.

Decided May 22, 1996.

---

388

Henry B. Fitzpatrick, Marcy B. Tanker, Philadelphia, for Cedents Committee.

Harold E. Kohn, David H. Weinstein, for Committee of Policyholders.

Richard A. Brown, Spencer L. Kimball, pro hac vice.

Robert H. Levin, Philadelphia, Richard DiSalle, Pittsburg, Roger Curran, Susan Hileman Malone, Harrisburg, for Appellee.

Before NIX, C.J., and FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## *OPINION*

NIX, Chief Justice.

We are called upon to examine the propriety of certain actions undertaken by the Insurance Commissioner of the Commonwealth of Pennsylvania in the capacity of Rehabilitator ("Insurance Commissioner" or "Rehabilitator") of the estate of the insolvent Mutual Fire, Marine and Inland Insurance Company ("Mutual Fire"). The intricate facts surrounding Mutual Fire's insolvency and many of the related circumstances have been fully detailed and exhaustively discussed in *Foster v. Mutual Fire, Marine and Inland Ins. Co.*, 531 Pa. 598, 614 A.2d 1086 (1992), *cert. denied,* 506 U.S. 1080, 113 S.Ct. 1047, 122 L.Ed.2d 356 (1993). However, for purposes of resolving the issues raised presently before us, we recite the following pertinent facts.

As a result of severe financial difficulties, Mutual Fire reported assets of $99.4 million and total liabilities of $260.1 million. The Insurance Commissioner at the time, George F. Grode, requested that he be appointed as Rehabilitator of Mutual Fire in December 1986. Once appointed as Rehabilitator, the Insurance Commissioner submitted a Plan of Reha-

bilitation ("the Plan") pursuant to section 515(a) of Article V of the Act of May 17, 1921, P.L. 789, *as amended* by the Act of December 14, 1977, P.L. 280, 40 P.S. § 221.15 ("the Insurance Company Act"). After modifying the Plan, the Commonwealth Court approved the Plan. *Grode v. Mutual Fire, Marine and Inland Ins. Co.*, 132 Pa.Commw. 196, 572 A.2d 798 (1990). This Court affirmed the decision of the Commonwealth Court, with the exception of one minor modification. *Foster v. Mutual Fire, Marine and Inland Ins. Co.*, 531 Pa. 598, 614 A.2d 1086 (1992), *cert. denied,* 506 U.S. 1080, 113 S.Ct. 1047, 122 L.Ed.2d 356 (1993). Appellant,[1] the Cedents Committee ("Cedents Committee" or "Committee"),[2] presently

1. The Committee of Policyholders was an Appellant at Nos. 110, 115, and 135 M.D. Appeal Docket 1990; 13, 24, 36, 37, 38, 39, 51, 52, 53, 73, and 74 M.D. Appeal Docket 1991; and 104 M.D. Appeal Docket 1992. However, that Committee and the Insurance Commissioner filed a Joint Application to Discontinue Appeals pursuant to Rule 1973(a) of the Pennsylvania Rules of Appellate Procedure. This Court granted the application on June 28, 1994, without prejudice to the appeals of the Cedents Committee. Thus, the Committee of Policyholders is no longer a party to this action.

2. The "Cedents Committee" is a designation used to refer collectively to the following ceding insurers: AIG Risk Management, American Centennial Insurance Co., American Financial Corp., Arkwright–Boston Manufacturers Mutual Insurance Co., Atlantic Mutual Fire Insurance Co., Crum & Forster, European General Reinsurance Company of Zurich, Excess and Casualty Reinsurance Assoc., Gerling Global Insurance Corporation, The Hartford Insurance Group, Heddington Insurance, Highlands Insurance Co., The Home Insurance Cos., Imperial Casualty and Indemnity Co., Lincoln Insurance Co., Maiden Lane Insurance Co., Mead Reinsurance Corp., Michigan Mutual Insurance Co., Mid–Continent Casualty Co., Monroe Guarantee Insurance Co., Mutual Marine Offices, Inc., Nationwide Insurance Group, North Star Mutual Insurance Co., Northwestern National Casualty Co., Norwich Union Fire Insurance Society Ltd., Old Republic, Pennsylvania National Insurance Cos., Resolute Insurance Co., Rhine Reinsurance Co., Ltd., Royal Insurance Cos., Royal Insurance (UK) Ltd., Safety Mutual Casualty Corp., Saskatchewan Government Insurance, Scottish & York International Insurance Group, South Central Insurance Co., Sphere Drake Underwriting Management, Ltd., Taisho Marine & Fire Insurance Co., Utica Mutual Insurance Co., H.S. Weavers Agencies Ltd., Willis Faber (Underwriting Management) Ltd., and Wausau Insurance Cos. Cedents are those companies whom Mutual Fire reinsures. *Foster v. Mutual Fire, Marine and Inland Ins. Co.*, 531 Pa. 598, 607 n. 1, 614 A.2d 1086, 1090 n. 1 (1992)(citing Plan of Rehabilitation, section I(4)).

objects to certain orders the Commonwealth Court entered which implemented various measures to facilitate the rehabilitation.

## No. 24 M.D. Appeal Docket 1991

The Commonwealth Court issued a memorandum opinion and order directing that certain financial data be filed with that court pursuant to the Plan. *Grode v. Mutual Fire, Marine and Inland Ins. Co.*, No. 3483 C.D. 1986, slip. op. at 1 (Pa.Commw.Feb. 26, 1991). It found that "Plan Section VI, implementing proportional payments, requires distribution, at least annually, of available cash from the estate of Mutual Fire." *Id.* In finding that the proportional allocation of accounts was key to the Section VI payment method and successful resolution of all estate claims, the Commonwealth Court directed the Rehabilitator to file with it and serve on all the parties on the short service list the following: a schedule, as of the prior year record date, all outstanding secured claims and the assets encumbered to secure them; a schedule of amounts set aside for administrative claims; a schedule of wage claims paid; and a schedule setting forth, as of the record date, the amounts allocated for class 4 claims under Section VI of the Plan and amounts set aside for case reserves, IBNR[3] and the estimation margin. *Id.* at 2. The court also directed the Rehabilitator to petition it for approval of the next record and distribution dates and to retain an actuary to analyze the above-mentioned set-asides for 1990 and 1991. *Id.*

The Commonwealth Court additionally construed Section XVI of the Plan, Financial Reporting, which requires "the Rehabilitator ... [to] file periodic financial reports and supporting data 'necessary to present Mutual Fire's financial condition fairly.'" *Id.* at 3. Pursuant to that section of the Plan, it ordered the Rehabilitator to file and serve notice of the filings on all the parties on the short service list: the

3. IBNR refers to amounts predicted to be paid in the future on account of events that have occurred but have not been reported as claims to the insurer. *Foster v. Mutual Fire, Marine and Inland Ins. Co.*, 531 Pa. 598, 619 n. 9, 614 A.2d 1086, 1097 n. 9 (1992).

annual budgets for 1990 and 1991, as well as quarterly reports for all four quarters of 1990 and each quarter henceforth. *Id.*

In order to gauge the Rehabilitator's progress in marshalling assets and resolving claims, the Commonwealth Court directed the Rehabilitator to provide a summary of outstanding reinsurance balances due Mutual Fire for paid losses, unpaid losses and IBNR and a collections summary for the 1990 calendar year segregated by reinsurers, agents, and policyholder premiums. *Id.* at 4.

Finally, to monitor the status of the Rehabilitator's claims handling, the Commonwealth Court directed the Rehabilitator to file a 1990 caseload summary and caseload summaries for 1991. The Commonwealth Court believed that "[s]uch reports [would] present to the [c]ourt and to interested parties an understandable picture of claims work at Mutual Fire and [would] not be unduly burdensome to the Rehabilitator." *Id.* at 4–5. Given the relief granted by the Commonwealth Court, it prohibited the taking of depositions and subpoenas in connection with the motion to compel compliance with the financial disclosure requirements of the Plan. *Id.* at 5 n. 1.

The Commonwealth Court concluded that the reason for requiring that certain financial information be supplied on a regular basis comes from the roles of the Rehabilitator and the Commonwealth Court in the rehabilitation proceedings. *Id.* at 6. It stated that "in the plain language of the statute, . . . the Rehabilitator shall 'take possession of the assets of the insurer . . . and . . . administer them under orders of the court.'" *Id.* (citing 40 P.S. § 221.15). In order for the Commonwealth Court to perform its statutory duty it had to be able to ascertain the financial condition of the estate. *Id.* It did not, however, see any authority, either in the Plan or the statute, to require more information from the Rehabilitator. *Id.* The Commonwealth Court was convinced that compliance with its opinion and order would present Mutual Fire's true financial condition; however, it left open the possibility that *any* creditor might raise questions as to the conduct of the Rehabilitator's administration of the estate in a pleading prior to the approval of the next record date. *Id.* at 6–7.

That court also made clear that it would continue to supervise the reporting of financial data. *Id.*

The Cedents Committee appeals from this February 26, 1991, order and opinion of the Commonwealth Court, which was modified by its subsequent order dated March 25, 1991.[4] For the reasons that follow, we affirm.

The Cedents Committee challenges the Rehabilitator's management of the estate of Mutual Fire. More specifically, it alleges that the Rehabilitator abused her discretion in managing the estate of Mutual Fire based upon inadequate financial information and in failing to disclose to the Cedents Committee sufficient financial documents in support of her actions. It submits that the Rehabilitator has refused to provide it with complete or accurate information to explain what it asserts has been a dramatic deterioration of the financial condition of Mutual Fire's estate since the Insurance Department took control in 1986. Consequently, the Cedents Committee also complains that the Commonwealth Court erred by failing to order full financial disclosure, including submission to depositions and compliance with subpoenas, despite the claim that a showing was made that the Rehabilitator's financial reports were grossly inadequate. Thus, the Cedents Committee concludes that lacking such necessary detailed information, the Commonwealth Court was effectively precluded from properly supervising the rehabilitation to the severe detriment of the rights of the cedents, which the Commonwealth Court is obligated to protect.

In addition to several challenges to this appeal itself,[5] the Rehabilitator argues in response that no authority

4. On March 25, 1991, the Commonwealth Court granted in part the Cedents Committee's Motion for Reconsideration. This order modified the February 26, 1991, order and opinion to the extent that it provided for service of certain filings on the Cedents Committee if requested and for immediate disclosure of Mutual Fire's 1989 Annual Statement.

5. The Rehabilitator filed a motion to quash the appeal filed by the Cedents Committee. First, the Rehabilitator argued that the order of the Commonwealth Court was not a final order because it provided any creditor with the opportunity to request supplemental or explanatory financial information. We disagree with this argument. While the

exists either by statute or in the Plan that entitles the Cedents Committee to the information it seeks. The Rehabilitator also submits that neither a statute nor the Plan entitles the Cedents Committee to perform concurrent review of every managerial decision proposed by the Rehabilitator. A thorough reading of the Plan and its modifications, it is argued,

Commonwealth Court did allow any creditor to subsequently object to the Rehabilitator's administration of the estate, it clearly ruled that certain requested information was not relevant and that the Act did not authorize the production of that additional information.

Alternatively, the Rehabilitator argued that the appeal must be quashed under Rule 1701(b)(3) of the Pennsylvania Rules of Appellate Procedure. Rule 1701(b)(3) provides in part that "[a] timely order granting reconsideration under this paragraph shall render inoperative any such notice of appeal or petition for review of a quasijudicial order theretofore or thereafter filed or docketed with respect to the prior order...."

In this case, the Commonwealth Court entered its order and opinion on February 26, 1991. The Cedents Committee then filed a motion for reconsideration. On March 25, 1991, the Commonwealth Court granted the Committee's motion for reconsideration in part. The new order amended paragraph nine of the original order to require service of certain filings with counsel for the Cedents Committee, counsel for the Policyholders Committee, and all other interested parties who request them in writing. It also added paragraph eleven which ordered the Rehabilitator to file and serve on counsel for the Policyholders Committee Mutual Fire's 1989 annual statement.

On March 28, 1991, the Cedents Committee filed its notice of appeal and jurisdictional statement with this Court. In the notice of appeal, the Cedents Committee stated that it appeals from the memorandum and order entered in this matter on February 26, 1991, as amended by the order entered on March 25, 1991. The Committee attached a copy of the docket entry for the February 26, 1991, order but failed to attach the copy of the docket entry for the March 25, 1991, order. The Committee attached to the jurisdictional statement a copy of the docket entry for both orders; however, in the caption, it stated only that it was appealing from the February 26, 1991, order. The Rehabilitator argued that because the notice of appeal seeks review of the February 26, 1991, order, which had already been the subject of the reconsideration order of the Commonwealth Court, the notice of appeal was inoperative pursuant to Rule 1701(b)(3).

We disagree. The notice of appeal was timely filed on March 28, 1991, and clearly states in the first sentence that the appeal was from the February 26, 1991, order as amended by the March 25, 1991, order. Additionally, the Committee attached to the jurisdictional statement copies of the docket entries for both orders. Thus, it is obvious that the Committee sought review of the resulting combination of both orders. The Committee gave timely notice of the orders and issues appealed from, and therefore, we will not quash this appeal. See Pa.R.A.P. 902.

clearly illustrates numerous financial reporting provisions which will enable the Commonwealth Court to properly supervise the progress of the rehabilitation and allow it to prevent any abuses. Finally, the Rehabilitator stresses that the financial disclosure requested by the Cedents Committee would circumvent and disregard the express statutory scheme and would be counterproductive and chaotic thereby rendering the Plan useless.

■ Our scope of review in rehabilitation proceedings is specific and limited to the question of whether the Commonwealth Court abused its discretion. *Foster v. Mutual Fire, Marine and Inland Ins. Co.*, 531 Pa. 598, 610, 614 A.2d 1086, 1092 (1992)(citing *Norfolk & W. Ry. Co. v. Pennsylvania Pub. Util. Comm'n*, 489 Pa. 109, 413 A.2d 1037 (1980)). This is so because we are reviewing judicial discretion exercised by the Commonwealth Court in an area within the realm of the Rehabilitator's expertise. *Id.* In this case, the Commonwealth Court reviewed the Rehabilitator's actions with regard to financial disclosure as prescribed by the Plan.

■ The Commonwealth Court found merit in the Cedents Committee's motion to compel compliance with financial disclosure requirements of the Plan. *Grode v. Mutual Fire, Marine and Inland Ins. Co.*, No. 3483 C.D. 1986, slip. op. at 5 n. 1 (Pa.Commw.Feb. 26, 1991). As a result, it ordered the Rehabilitator to file certain information with the Court and the parties on the short service list. The Commonwealth Court stated that "[a]n examination of the document list attached to the subpoenas reveals that we have ordered, for the most part and to the extent ... deem[ed] relevant, that which those subpoenas demanded." *Id.* It found, however, that further subpoenas and depositions were unnecessary and, thus, included an order prohibiting depositions and subpoenas with the motion to compel financial disclosure. *Id.* The authority for its decision was the Insurance Company Act and the Plan.

We emphasize that the filing of the information we have delineated [in this Order and opinion] is mandated by statute and by the Plan, which the Rehabilitator proposed to

the [Commonwealth] Court pursuant to the statute. Section 8 of Article V of the Insurance Company Law of 1921, *as amended,* provides that "[t]he Commissioner shall as receiver make such reports to the court at such times and in such manner as the court shall require." 40 P.S. § 221.8. The term receiver in this context is synonymous with rehabilitator. 40 P.S. § 221.3. Absent any statutory mandate governing submission of reports in the rehabilitation provisions of the statute, we conclude that Section 8 [of the Insurance Company Act] governs. Thus, the Rehabilitator must report to the [Commonwealth] Court "as the Court requires."

*Id.* at 5–6. We agree with this analysis.

 The Cedents Committee argues, however, that it is entitled to *additional* information regarding Mutual Fire's financial condition pursuant to Rules 4001–4020 of the Pennsylvania Rules of Civil Procedure. As the Commonwealth Court correctly stated, the Act and the Plan are the source for financial reporting obligations in insurance rehabilitation proceedings. *Grode v. Mutual Fire, Marine and Inland Ins. Co.,* No. 3483 C.D. 1986, slip. op. at 5 (Pa.Commw.Feb. 26, 1991). The Act requires "[t]he Commissioner as receiver [6] [to] make such reports to the court at such times and in such manner as the court shall require." 40 P.S. § 221.8 (footnote added). Because the Act does not specifically provide for submission of reports in the rehabilitation provisions of the statute, section 221.8 governs submission of financial reports. Thus, the Rehabilitator must report to the Commonwealth Court as that court requires.

As discussed above, this Court may not reverse the Commonwealth Court absent a finding that it abused its discretion. *Foster v. Mutual Fire, Marine and Inland Ins. Co.,* 531 Pa. 598, 610, 614 A.2d 1086, 1092 (1992). Here, the Commonwealth Court ordered the Rehabilitator to engage in more financial disclosure than the Rehabilitator thought was warranted. It required the Rehabilitator to file for the most part

6. The term "receiver" in this context is synonymous with rehabilitator. 40 P.S. § 221.3.

that which the subpoenas requested. This decision was based on the relevancy of the information requested by the Committee. *Grode v. Mutual Fire, Marine and Inland Ins. Co.*, No. 3483 C.D. 1986, slip. op. at 5 n. 1 (Pa.Commw.Feb. 26, 1991). . We find no abuse of discretion in the Commonwealth Court's decision prohibiting depositions and subpoenas *in connection with this motion.*[7]  Additionally, the Commonwealth Court provided an adequate remedy for creditors should they have questions regarding the conduct of the Rehabilitator's administration of the estate. After an examination of the financial data generated by the Commonwealth Court's order, "*any* creditor may raise ... questions in a pleading prior to the approval of the next record date. The [Commonwealth] Court may require the Rehabilitator to respond or may *on its own motion* seek supplemental information or further explanations of the data submitted." *Grode v. Mutual Fire, Marine and Inland Ins. Co.*, No. 3486 C.D. 1986, slip. op. at 6-7 (Pa. Commw. Feb. 26, 1991). Thus, because the Commonwealth Court did not abuse its discretion, this argument fails.

█ The Committee next argues that the laws of fiduciary responsibility and federal bankruptcy laws entitle it to additional information. However, a thorough reading of the record discloses that the Committee did not address these arguments in its motions and briefs before the Commonwealth Court. A different theory of relief cannot be advanced for the first time on appeal. *See, e.g., Curran v. Philadelphia Newspapers, Inc.*, 497 Pa. 163, 439 A.2d 652 (1981); *Dilliplaine v. Lehigh Valley Trust Co.*, 457 Pa. 255, 322 A.2d 114 (1974). Thus, we will not address these arguments.

█ The Committee also argues that the Due Process Clauses of the United States and Pennsylvania Constitutions require the Rehabilitator to provide access to information

7. We note that the Commonwealth Court, in the Plan, expanded the reporting requirements proposed by the Rehabilitator, accepting many of the suggestions made by the Committee. *Mutual Fire,* slip op. at 6. The Cedents Committee did not appeal this provision of the Plan. As a result, we will not allow the Committee to attack the Plan now after the Plan has been approved. *See Foster v. Mutual Fire, Marine & Inland Ins. Co.,* 531 Pa. 598, 614 A.2d 1086 (1992).

about the state of the rehabilitation and entitle the Committee to receive the additional information it requested. It submits that without meaningful financial information, and the basis for that information, the Committee is denied its due process right to adequate notice concerning the disposition of its property that would enable it to present objections and protect its property interests.

In support of its argument, the Committee cites *Pennsylvania Coal Mining Ass'n v. Insurance Dep't*, 471 Pa. 437, 452, 370 A.2d 685, 692–93 (1977), for the proposition that "[n]otice should be reasonably calculated to inform interested parties of the pending action, and the information necessary to provide an opportunity to present objections." This case, however, does not provide the Committee with the relief it requests. The Committee was given notice and the opportunity to object, as required by *Pennsylvania Coal Mining Ass'n, supra*, when the Commonwealth Court ordered the Rehabilitator to file for the most part that which the Committee demanded. Additionally, we agreed with the Commonwealth Court that the financial information the Committee was denied access to was not relevant and not required by the Act. Any future concerns regarding notice and the opportunity to be heard were resolved by the Commonwealth Court's order and opinion, which required notice and invited any creditor having questions or objections concerning the financial information filed by the Rehabilitator to submit a pleading to the Commonwealth Court prior to the approval of the next record date. Thus, this claim must also fail.

Accordingly, the order of the Commonwealth Court is affirmed.

### No. 13 Appeal Docket 1991

In this matter, the Cedents Committee appeals from the Commonwealth Court's order granting petitions for allowance of professional fees and expense reimbursements for services rendered in connection with the rehabilitation proceedings. *Grode v. Mutual Fire, Marine and Inland Ins. Co.*, No. 3483 C.D. 1986 (Pa.Commw.Jan. 30, 1991). For the reasons that follow, we affirm in part, reverse in part, and remand to the

Commonwealth Court to unseal fee petitions requesting fees that were not included in and filed after the Commonwealth Court's August 9, 1990, order.

Under the Plan, the Rehabilitator is responsible for, *inter alia*, marshalling and collecting assets for the estate. Section IV of the Plan (R.R. at 28a). The Act and the Plan grant her the authority to hire, manage and compensate professionals who provide services to the estate. 40 P.S. § 221.16; Section XI of the Plan (R.R. at 46a).[8] The Plan provides for a two-step approval procedure for the payment of outside counsel fees and expenses. *See* Section II.B.1 of the Plan (R.R. at 16a). The Rehabilitator performs the initial review which is "subject to final review and approval by the [Commonwealth] Court." Section II.B.1. Further, Section XI.B requires that the form of the fee application be adequate for the court to make a determination as to the reasonableness of the fees.[9]

Pursuant to the Plan and the Act, the Rehabilitator retained various outside counsel including Hoyle, Morris & Kerr ("Hoyle, Morris"); Miller, Alfano & Raspanti, P.C. ("Miller, Alfano"); and Rose, Schmidt, Hasley & DiSalle ("Rose, Schmidt"). All three law firms were approved by the Commonwealth Court. *See* (R.R. at 3a; 63a; 70a). Each of these law firms has provided and continues to provide services to the estate of Mutual Fire. The law firms submit their statements for fees and expenses and all supporting documentation to the Rehabilitator for initial review. Following the Rehabilitator's examination and approval, fee petitions are filed with

8. Section IX provides in pertinent part:
     The Rehabilitator shall have full power to direct and manage, to hire, compensate and discharge employees subject to any contract rights they may have, and to deal with the property and business of Mutual Fire.
     (R.R. at 46a).

9. Section XI.B provides:
     Professionals approved by the Court to perform services for Mutual Fire or the Rehabilitator shall submit fee applications to the Court for approval in a form adequate for the Court to determine whether professional fees and expenses are necessary, reasonable, and prudent.
     (R.R. at 46a).

the Commonwealth Court for its own review. Time records reflecting each firm's services and disbursements accompany the fee petitions. The time records are filed under seal. The fee petitions, which contain general descriptions of the work performed and the total fees requested for each matter, are not filed under seal.

On December 8, 1989, Rose, Schmidt submitted its first fee petition to the Commonwealth Court, requesting payment for services performed through September 26, 1989. (R.R. at 108a–118a). No objections were filed to the performance of the services described in the fee petition,[10] and the Commonwealth Court approved the petition by order dated December 22, 1989.

Subsequently, Rose, Schmidt submitted fee petitions ("Petition 2") requesting payment for services performed during the period of September 26, 1989, through January 25, 1990.[11] (R.R. at 120a–144a). On May 7, 1990, the Cedents Committee filed objections to Petition 2, arguing that the work done by Rose, Schmidt was outside the scope of its appointment and/or not necessary. (R.R. at 288a–306a).

By order dated August 9, 1990, the Commonwealth Court, having considered Petition 2 and the objections thereto, or-

10. As referenced in the fee petition, Rose, Schmidt's services to the estate during that period included the following matters:
   *Peat Marwick*—drafting and preparing a complaint;
   *Federal Court Action*—preparation of motions to intervene and to dismiss policyholders' class action against Peat Marwick;
   *Contempt Petition*—preparation of petition for rule to show cause why counsel for the Policyholder Committee should not be held in contempt; and
   *Officers and Directors*—advice and counsel regarding possible settlement of action against former directors and officers.
   (R.R. at 110a–111a).

11. In these petitions, Rose, Schmidt requested payment for the following services:
   (a) opposition to the Policyholders' federal class action;
   (b) the contempt petition;
   (c) the dissolution of the Policyholder Committee;
   (d) the action against the directors and officers;
   (e) the *Rental Tools* case; and
   (f) the ongoing rehabilitation proceeding.
   (R.R. at 120a–144a).

dered the Rehabilitator to pay the fees to Rose, Schmidt. (R.R. at 311a–315a).[12] The Cedents Committee did not appeal this order, and the fees were paid.

Rose, Schmidt's services during the subsequent billing periods of January 26, 1990, through August 25, 1990, were included in fee petitions [13] which it submitted to the Commonwealth Court on July 10, 1990, and October 24, 1990. ("Petition 3") (R.R. at 146a–159a; 160a–172a). During that time period, Rose, Schmidt continued to provide services to the Rehabilitator relating to the same matters for which the Commonwealth Court had already approved fees in Petition 2. It also requested fees for work done in connection with the Vacarello employment contract, which had not been requested previously.

On December 4, 1990, the Cedents Committee filed objections to Petition 3, as well as a motion to disgorge fees requested in Petition 2 and paid to Rose, Schmidt under the August 9, 1990, order. These objections asserted the identical objections raised to Petition 2, except for the Vacarello contract. *Compare* (R.R. at 220a–239a) *with* (R.R. at 288a–310a). The Cedents Committee also filed a petition to compel disclosure of fee petitions and records filed under seal. *See* (R.R. at 173a–251a). Additionally, the Committee also filed a petition to compel disclosure of documents filed under seal by Hoyle, Morris and Miller, Alfano. *See* (R.R. at 173a–251a).

The Rehabilitator moved to strike the objections and the motions to disgorge fees on the grounds that the Committee

12. The August 9, 1990, order, also approved Rose, Schmidt's request for payment with respect to services performed from January 26, 1990, through February 25, 1990. (R.R. at 313a). The fee petition covering this month was filed on July 11, 1990.

13. In Petition 3, Rose, Schmidt requested fees for the following services:
    (a) opposition to the Policyholders' federal class action;
    (b) the contempt petition;
    (c) the dissolution of the Policyholder Committee;
    (d) the action against the directors and officers;
    (e) the *Rental Tools* case;
    (f) the ongoing rehabilitation proceeding; and
    (g) the Vacarello employment contract.
    (R.R. at 147a–156a; 162a–171a).

was barred by *res judicata* and collateral estoppel from relitigating the same claims and issues which had been determined by the Commonwealth Court in its August 1990, order. (R.R. at 316a–353a). By order of January 30, 1991, which is the subject of this appeal, the Commonwealth Court approved Petition 3 but did not speak to the request to disgorge fees. Additionally, the Commonwealth Court did not comment on the requests to compel disclosure of documents filed under seal. The Cedents Committee appealed this order to this Court.

██ The Cedents Committee argues that by filing these fee petitions under seal, the Committee and the Commonwealth Court, because it does not have the benefit of the Committee's objections, cannot determine if these fees and expenses are for services within the scope of the various employment agreements and comport with the standards of reasonableness, necessity and prudence as set forth in the Plan. *See supra* note 9. The Rehabilitator responds that counsel's time and disbursement records must be filed under seal to ensure that the Rehabilitator's litigation and collection strategy is not disclosed to those parties who must defend claims made by the Rehabilitator on behalf of the estate of Mutual Fire.

We agree with Committee's argument. Subsequent to the January 30, 1991, order approving fees, the Commonwealth Court, in a memorandum opinion and order, concluded:

[W]e find we cannot agree with the Rehabilitator that at this stage of the rehabilitation proceedings, it is, *as a matter of routine,* necessary to file the entire petitions or underlying documentation under seal. We will therefore direct the Rehabilitator and her counsel in the future to file petitions not under seal, but to cover or excise those detailed descriptions of the services rendered which they consider in any way privileged or confidential. The Rehabilitator should also serve notice of every fee petition to parties on the short service list and should make those petitions, with excisions, available to counsel for the policyholders committee without charge, upon request.

*Grode v. Mutual Fire, Marine and Inland Ins. Co.,* No. 3483 C.D.1986, slip op. at 2 (Pa.Commw.Feb.11, 1992).[14] We find that this latter method of requesting fees is the more prudent method, especially since one of the purposes of the Act "is the protection of the interests of insureds, creditors, and the public generally...." 40 P.S. § 221.1(c).

■ The Rehabilitator submits, however, that the Cedents Committee should be barred under the doctrines of *res judicata* and collateral estoppel from raising its objections to the January 30, 1991, order because it raised the same objections to the August 9, 1990, order.

In *Clark v. Troutman,* 509 Pa. 336, 502 A.2d 137 (1985), we discussed the term *res judicata* and what it encompasses.

The term "res judicata" is often sweepingly used, by courts and litigants alike, to refer to the various ways in which a judgment in one action will have a binding effect in a later action. "Res judicata" encompasses the modern principle of issue preclusion (traditionally known as estoppel), which is the common law rule that a final judgment forecloses relitigation in a later action involving at least one of the original parties, of an issue of fact or law which was actually litigated and which was necessary to the original judgment. The purposes of the rule are the protection of litigants from the dual burden of relitigating an issue with the same party or his privy and the promotion of judicial economy through prevention of needless litigation.

*Id.* at 340, 502 A.2d at 139 (citation omitted).

We find that with regard to the arguments made by the Cedents Committee in its objection to Petition 2, it cannot now

**14.** In June 1991, the Honorable James Crumlish, Jr., retired from the bench, and the Honorable Charles A. Lord succeeded Judge Crumlish in supervising the Mutual Fire rehabilitation proceedings. In the February 11, 1992, order, Judge Lord was ruling on subsequent fee petitions and objections.

The Cedents Committee submitted this communication to this Court after briefing but prior to oral argument. Thus, the requirements of Rule 2501 of the Pennsylvania Rules of Appellate Procedure, Post–Submission Communications, do not apply here.

raise those *same* arguments in its objection to Petition 3. The Cedents Committee had the opportunity to appeal from the adverse August 9, 1990, ruling it received. It chose not to take an appeal. Those issues are now barred under the theory of issue preclusion. *See Id.*[15] This conclusion "is essential so that [the] parties may rely on [the] judgments in ordering their private affairs and so that the moral force of [the] court['s] judgment will not be undermined." *Id.* at 340, 502 A.2d at 139.[16]

Thus, we affirm in part, reverse in part, and remand this matter to the Commonwealth Court to follow the above procedures with regard to those matters contained in Petition 3 that were not contained in Petition 2.[17] As to those matters not contained in Petition 2, the Rehabilitator and her counsel are directed to follow the above-stated excision procedure and serve a copy on the Cedents Committee. The Cedents Committee shall then have an opportunity to challenge the fee petition.[18]

### No. 74 M.D. Appeal Docket 1991

Similarly, in this matter, the Cedents Committee appeals from the Commonwealth Court's order granting petitions for allowance of professional fees and expense reimbursements for services rendered in connection with the rehabilitation pro-

15. We note that we do not see an objection to the Vacarrello employment contract in Petition 2. Thus, the Cedents Committee was not precluded from raising this issue as to the new fees requested in Petition 3. Additionally, with regard to Hoyle, Morris and Miller, Alfano, there was no prior objection to their services. The Rehabilitator must therefore follow the outlined excision procedure as to these claims for fees.

16. The Rehabilitator raises other procedural bars to this appeal. Because they lack any merit, we will not address them.

17. The Cedents Committee raises various other issues. However, because of our resolution of this matter, we need not address those other issues.

18. We refrain from ruling on the specific objection to the Vacarrello employment contract. Without the underlying documentation or a specific ruling by the Commonwealth Court, we are unable to determine whether this work was outside the scope of Rose, Schmidt's employment order.

ceedings. *Grode v. Mutual Fire, Marine and Inland Ins. Co.,* No. 3483 C.D.1986 (Pa.Commw. June 28, 1991). For the reasons stated above in No. 13 M.D. Appeal Docket 1991, we affirm in part, reverse in part, and remand to the Commonwealth Court to unseal fee petitions requesting fees that were not included in and were filed after the Commonwealth Court's August 9, 1990, order.

Accordingly, at No. 24 M.D. Appeal Docket 1991, we affirm the order of the Commonwealth Court. At Nos. 13 and 74 M.D. Appeal Docket 1991, we affirm in part, reverse in part, and remand to the Commonwealth Court for proceedings consistent with this opinion.

LARSEN, J., did not participate in the consideration or decision of this case.

McDERMOTT and PAPADAKOS, JJ., did not participate in the decision of this case.

CAPPY, J., concurs in the result.