**[J-72-2020]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| IN RE:  APPEAL OF COATESVILLE AREA SCHOOL DISTRICT FROM THE DECISION OF THE CHESTER COUNTY BOARD OF ASSESSMENT APPEALS FOR THE PROPERTY LOCATED AT 50 SOUTH FIRST AVENUE, CITY OF COATESVILLE, CHESTER COUNTY, PENNSYLVANIA, PROPERTY TAX PARCEL  NO. 16-05-0229.0000 | : : : : : : : : : | No. 7 MAP 2020 Appeal from the Order of the Commonwealth Court at Nos. 1130 & 1161 CD 2018 dated 8/7/19, dismissing the order dated 6/30/18, exited 7/5/18, by the Chester County Court of Common Pleas, Civil Division, at No. 2013-10936 |
| APPEAL OF:  COATESVILLE AREA SCHOOL DISTRICT | : : : | ARGUED:  September 16, 2020 |

*OPINION*

**CHIEF JUSTICE SAYLOR**                          **DECIDED:  January 20, 2021**

In this appeal by allowance, two taxing districts undertook parallel challenges to a property's partial tax exemption.  We consider whether *res judicata* and collateral estoppel preclude merits disposition of the second taxing district's appeal to the Commonwealth Court, where the first district elected not to appeal to that court.

## I.  Background

Appellee Huston Properties, Inc. ("Taxpayer"), owns the subject property, a historically significant building in Coatesville, Chester County (the "Property").  In 2013, Taxpayer, claiming to be a charitable institution, sought tax-exempt status for the Property for the 2014 tax year.  After a hearing, the Chester County Board of Assessment Appeals granted a partial exemption of 72%, reasoning that that portion of

the Property was used for charitable purposes. It thus reduced the Property's assessment from $954,450 to $267,250.[1]

On October 31, 2013, the City of Coatesville appealed that decision to the Chester County Court of Common Pleas, which hears tax assessment appeals *de novo*. *See Green v. Schuylkill Cty. Bd. of Assessment Appeals*, 565 Pa. 185, 195, 772 A.2d 419, 425 (2001); 53 Pa.C.S. §8854(a)(1).[2] In its appeal, the City challenged the Property's partially-tax-exempt status. The appeal was docketed at No. 2013-10761 (the "City's case"). Six days later, the Coatesville Area School District – another taxing authority encompassing the Property – lodged its own appeal, also challenging the Property's partially-tax-exempt status. That appeal was docketed at 2013-10936 (the "School District's case").

On December 31, 2013, the School District filed a notice of intervention in the City's case. *See* 53 Pa.C.S. §8855 (giving taxing districts the right to appeal assessments within its jurisdiction, and to participate in assessment appeals initiated by others). In January 2015, the common pleas court, per Judge Carmody, issued an

---

[1] Under Pennsylvania law, charitable institutions enjoy tax-exempt status to the extent their properties are used for charitable purposes. *See* PA. CONST. art. VIII, §2(a)(v); Act of Nov. 26, 1997, P.L. 508, No. 55 (as amended 10 P.S. §§371-385) (the Institutions of Purely Public Charity Act).

Although the appeal originally pertained only to the 2014 tax year, by operation of law it encompassed the Property's valuation for subsequent tax years during the pendency of the appeal. *See* 53 Pa.C.S. §8854(a)(5).

[2] Section 8854 is part of the Consolidated County Assessment Law, Act of Oct. 27, 2010, P.L. 895, No. 93, §2 (as amended 53 Pa.C.S. §§8801-8868) (the "Assessment Law"). *See generally In re Consol. Appeals of Chester-Upland Sch. Dist.*, ___ Pa. ___, 238 A.3d 1213, 1216 n.2 (2020) (noting that the Assessment Law recodifies several previous acts relating to various classes of counties). The Assessment Law is to be read *in pari materia* with the Institutions of Purely Public Charity Act. *See* 53 Pa.C.S. §8804(b).

order consolidating the appeals for trial, and a consolidated trial was ultimately held in November of that year. By that time, Senior Judge Shenkin was presiding over the case, and although he expressed uncertainty as to whether the consolidation order applied only to the actual hearing or to the cases as a whole, *see* N.T., Nov. 17, 2015, at 15, in the post-trial timeframe he treated it as applying only to the trial. Thus, in resolving the matters, he issued two separate but identical orders, one for each of the appeals, rather than a single order with a double caption.[3] In the orders, he affirmed the Board's grant of a partial exemption and its assessment figure of $267,250.

Both the City and the School District appealed to the Commonwealth Court, and Taxpayer cross-appealed as to each, seeking fully-exempt status for the Property. *See* 53 Pa.C.S. §8854(b) (authorizing such appeals). The intermediate court consolidated the four appeals and designated the City and School District as the appellants.

In a memorandum decision, the Commonwealth Court vacated and remanded to the trial court for more specific findings to support the partial tax exemption. The appellate court expressed that the common pleas court should have set forth its findings and legal conclusions as to the specific factors discussed in *Hospital Utilization Project v. Commonwealth*, 507 Pa. 1, 22, 487 A.2d 1306, 1317 (1985), as well as the elements reflected in Section 5 of the Institutions of Purely Public Charity Act, *i.e.*, 10 P.S. §375(b). *See In re City of Coatesville*, Nos. 511, 530, 607, 608 C.D. 2016, 2017 WL 631821, at *2-*3 (Pa. Cmwlth. Feb. 16, 2017).

On remand, the trial court set forth particularized findings and conclusions, and re-affirmed its earlier decision assessing the Property at $267,250. It issued two opinions to this effect on the same day. The opinions were, again, substantively

---

[3] The orders differed only in their captions and in that one of the orders contained an explanatory footnote, while the other incorporated that footnote by reference.

identical, the only difference being that the captions reflected different docket numbers: one for the City's case, and the other for the School District. At this juncture, the City elected not to appeal to the Commonwealth Court. For its part, the School District appealed the ruling in its own case, but it did not appeal the identical, simultaneous ruling which contained the City's docket number.

Taxpayer moved to quash the School District's appeal. The Commonwealth Court granted the motion and dismissed the appeal in a published decision. *See In re Coatesville Area Sch. Dist.*, 216 A.3d 539 (Pa. Cmwlth. 2019).[4] The court observed that the common pleas court's ruling in the City's case became final after no party appealed it. Because the School District had intervened in that matter, the court continued, it was a party to those proceedings. With that premise, the court found that *res judicata*, relating to claim preclusion, and collateral estoppel, relating to issue preclusion, barred it from reaching the merits. *See id.* at 542-43. Additionally, the court noted that a given property can only have one assessed value regardless of how many taxing districts have authority to tax it. The court suggested that an "absurd result" could ensue if the assessment figure ultimately reached on appeal in the School District's case were to differ from the trial court's final, unappealed assessment in the City's case, *i.e.*, $267,250. *Id.* at 544.

This Court granted further review to consider whether the Commonwealth Court acted properly in invoking the doctrines of *res judicata* and collateral estoppel. *See In re Coatesville Area Sch. Dist.*, ___ Pa. ___, 224 A.3d 1090 (2020) (*per curiam*).

---

[4] For convenience we refer to "the appeal" in the singular. In fact, Taxpayer had again cross-appealed to the Commonwealth Court in relation to the School District's appeal, and the Commonwealth Court consolidated the two appeals. This circumstance does not affect our analysis.

## II.  Preclusion doctrines

*Res judicata* – literally, a thing adjudicated – is a judicially-created doctrine.  *See Estate of Bell*, 463 Pa. 109, 113, 343 A.2d 679, 681 (1975).  It bars actions on a claim, or any part of a claim, which was the subject of a prior action, or could have been raised in that action.  *See R/S Financial Corp. v. Kovalchick*, 552 Pa. 584, 588, 716 A.2d 1228, 1230 (1998); *Balent v. City of Wilkes-Barre*, 542 Pa. 555, 563, 669 A.2d 309, 313 (1995).  This Court has explained that

> [r]es judicata, or claim preclusion, prohibits parties involved in prior, concluded litigation from subsequently asserting claims in a later action that were raised, or could have been raised, in the previous adjudication. The doctrine of res judicata developed to shield parties from the burden of re-litigating a claim with the same parties, or a party in privity with an original litigant, and to protect the judiciary from the corresponding inefficiency and confusion that re-litigation of a claim would breed.

*Wilkes ex rel. Mason v. Phoenix Home Life Mut. Ins. Co.*, 587 Pa. 590, 607, 902 A.2d 366, 376 (2006) (citation omitted); *see also R/S Financial*, 552 Pa. at 588, 716 A.2d at 1230 ("The purposes of the rule are the protection of the litigant from the dual burden of relitigating an issue with the same party or his privy and the promotion of judicial economy through prevention of needless litigation." (quoting *Foster v. Mut. Fire, Marine & Inland Ins. Co.*, 544 Pa. 387, 404, 676 A.2d 652, 661 (1996))).[5]

---

[5] The Commonwealth Court referenced the "preclusion doctrines of *technical* res judicata and collateral estoppel[.]"  *Coatesville Area Sch. Dist.*, 216 A.3d at 541 (emphasis added).  The parties also use this terminology in their briefs.

The addition of "technical" before *res judicata* appears to represent an effort to clarify that the focus is on claim preclusion, as this Court has at times suggested that absent any modifier, *res judicata* is an umbrella term encompassing both claim preclusion and issue preclusion.  *See, e.g., City of Pittsburgh v. Zoning Bd. of Adjustment*, 522 Pa. 44, 55, 559 A.2d 896, 901 (1989).  *See generally* 50 C.J.S. *Judgments* §927 (2020) (noting the imprecision in courts' use of the two terms, and that in some instances *res judicata* is utilized in a broad, generic sense to refer to a group of related concepts). (continued…)

Four elements common to both actions, sometimes termed the "four identities," *see, e.g.*, *Estate of Tower*, 463 Pa. 93, 100, 343 A.2d 671, 674 (1975), must be present for *res judicata* to apply: "an identity of issues, an identity of causes of action, identity of persons and parties to the action, and identity of the quality or capacity of the parties suing or being sued." *In re Iulo*, 564 Pa. 205, 210, 766 A.2d 335, 337 (2001) (citing *Safeguard Mut. Ins. Co. v. Williams*, 463 Pa. 567, 574, 345 A.2d 664, 668 (1975)).

Collateral estoppel is similar in that it bars re-litigation of an issue that was decided in a prior action, although it does not require that the claim as such be the same. For example, if, in a breach of contract action, the defendant asserts that the contract is invalid because of fraud, but the contract is ruled valid and the defendant is found liable, in a future lawsuit against the same party alleging a separate breach of the same contract the defendant is precluded from asserting the invalidity of the contract based on fraud. *See* RESTATEMENT (SECOND) OF JUDGMENTS §27, cmt. a, illus. 2 (1982).

Collateral estoppel will only apply where: the issue is the same as in the prior litigation; the prior action resulted in a final judgment on the merits; the party against whom the doctrine is asserted was a party or in privity with a party to the prior action; and the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior action. *See Rue v. K-Mart Corp.*, 552 Pa. 13, 17, 713 A.2d 82, 84 (1998). In some renditions, courts add a fifth element, namely, that resolution of the issue in the prior proceeding was essential to the judgment. *See, e.g.*, *Office of Disciplinary Counsel v. Kiesewetter*, 585 Pa. 477, 484, 889 A.2d 47, 50-51 (2005).

---

(…continued)

For simplicity, we presently use *res judicata* to refer to claim preclusion, and collateral estoppel to signify issue preclusion.

Collateral estoppel is premised on practical considerations that overlap substantially with those of *res judicata.* These include avoiding the "cost and vexation" of repetitive litigation, conserving judicial resources, "and, by preventing inconsistent decisions, encourage[ing] reliance on adjudication." *Id.* at 484, 889 A.2d at 51.

### III. Application of the preclusion doctrines

#### A. *Res judicata*

Insofar as *res judicata* is concerned, a straightforward application of that doctrine in this matter is complicated by multiple factors. First, it is not entirely clear whether the third element, the identity of the parties to the two actions, is satisfied. Although the School District filed a notice of intervention in the City's case, this alone did not give it party status pursuant to the statewide Rules of Civil Procedure promulgated by this Court. Those rules – which contemplate intervention by petition, hearing, and court order, *see* Pa.R.C.P. Nos. 2328, 2329 – do not apply to tax assessment appeals. *See Appeal of Borough of Churchill*, 525 Pa. 80, 87, 575 A.2d 550, 553 (1990). Further, the School District did not comply with the county court's local rules for becoming a party, which require that notice of intervention be filed within 30 days after receiving notification of the appeal. *See* Chester Cty. Court of Common Pleas Civil Rule No. 5003(a), *reprinted in* RR. 272a. As described above, the School District's notice of intervention was filed approximately two months after the City commenced its trial court appeal, well beyond the 30-day deadline.

Besides this technical defect – which might be deemed immaterial as Taxpayer and the Board do not appear to have raised it as precluding intervention – we re-emphasize that *res judicata* is a judicially-created precept based on prudential concerns which seek to avoid the re-litigation, in a subsequent action, of a claim that was

resolved in a prior action.[6] Here, by contrast, two appeals from the Board's assessment figure, initiated by two different taxing authorities, were commenced at approximately the same time and have proceeded in parallel. Taxpayer concedes that "[f]rom the beginning, there have been two appeals on parallel tracks, the only differences being the party who initiated the appeal and the docket numbers." Brief for Appellee (Taxpayer) at 10. We agree and note that the two appeals were, for all practical purposes, a single action, as their subject matter and sole issue – whether the Property should have been given partial tax-exempt status for the 2014 tax year – were identical, and they were consolidated for trial on that issue.[7]

That being the case, concerns relating to the inefficiency and burden of permitting serial litigation of a single claim simply are not present in this dispute. Indeed, Taxpayer has never argued that they are. Taxpayer's position appears to be, rather, that the School District's decision not to take a further appeal to the Commonwealth Court from the trial court's ruling in the City's case bars it from doing so in its own case. The implication is that if the School District had not noted its

---

[6] *See generally Wilkes*, 587 Pa. at 607, 902 A.2d at 376; Barbara A. Gimbel, *The Res Judicata Doctrine Under Illinois and Federal Law*, 88 ILL. BAR. J. 404, 404 (2000) (observing that *res judicata* is a judicial tool "directed at promoting judicial economy and preventing piecemeal and protracted litigation"); *see also Proper test to determine identity of claims for purposes of claim preclusion by res judicata under federal law*, 82 A.L.R. Fed. 829, at §2[a] (1987 & 2020 supp.) ("The rule rests on the ground that once a party has litigated, or has had the opportunity to litigate, the same matter in a court of competent jurisdiction, that party or its privy should not be permitted to litigate it again to the harassment and vexation of its adversary.").

[7] Although we cannot know with certainty, it seems likely that if any party had appealed to the Commonwealth Court from the order in the City's case, the Commonwealth Court would again have consolidated that appeal with the appeal in the School District's case. Thus, in all likelihood, neither Taxpayer's litigation burden, nor the expenditure of judicial resources, would have been materially affected if the School District had done what Taxpayer claims it was required to do in order to preserve its appellate rights.

intervention in the City's case, it would not now be precluded from pressing its contention on appeal.

We find this to be a misuse of the *res judicata* concept. As employed here, it did not serve to shield a party or the courts from repetitive or abusive litigation, but to thwart the School District's substantive appellate rights. In this regard, we find salience in the Board's argument that *res judicata* was

> designed to defeat attempts by parties to obtain a second trial on the same cause between the same parties by contriving minor difference or casting the original cause of action as a new cause of action. The School District's appeal is not a recasting of an original cause of action in order to get a second "bite at the apple." Instead, it is merely seeking appellate review of the trial court's determination that the Property is entitled to a partial exemption from taxation.

Brief for Appellee (Board) at 5 (some internal quotation marks and citations omitted).[8]

Just as important, it is not clear that the final judgment in the City's case constitutes a "prior" judgment as is required for application of *res judicata*. *See In re R.L.L.'s Estate*, 487 Pa. 223, 228, 409 A.2d 321, 323-24 (1979) (reaffirming the rule that a final judgment is a *res judicata* prerequisite). Some jurisdictions have held that a final judgment issued in one case lacks preclusive effect relative to merits review of a separate judgment issued in a different case. *See, e.g., Nationwide Mut. Ins. Co. v. Liberatore*, 408 F.3d 1158, 1162 (9th Cir. 2005) (stating that "a decision entered coincident with the judgment on appeal, just as a judgment entered after the judgment on appeal, can scarcely constitute a bar to the instant action" (internal quotation marks and citation omitted)). One legal encyclopedia articulates this principle in more general terms, observing that "while a court judgment carries preclusive effect going forward, it

---

[8] Although the Board is an Appellee, it favors reversal and has expressly joined in the School District's arguments. *See id.* at 4.

cannot operate to bar direct review of an extant judgment." 46 AM. JUR. 2D *Judgments* §451; *cf.* RESTATEMENT (SECOND) OF JUDGMENTS §15 (stating as a general rule that a valid final personal judgment is conclusive "except on appeal *or other direct review*" (emphasis added)).

We do not presently decide whether to adopt Section 451 *in toto*, particularly as the question has not been raised or briefed by the parties. We do hold, though, that the rule embodied in that provision currently obtains in light of the unusual circumstances leading to this appeal – where, as explained, claim preclusion would serve no salutary purpose and would, instead, deprive a party of merits review based on the fortuity that the two virtually identical cases were deemed to have been consolidated for trial only and not for disposition. Thus, we find that *res judicata* was improperly viewed by the intermediate court as a barrier to merits resolution of the School District's appeal.

## B. Collateral Estoppel

For similar reasons, we are not convinced that collateral estoppel should have been interposed as a bar in the present scenario. Preliminarily, although collateral estoppel focuses on issues rather than claims, Taxpayer does not suggest that any discrete "subset" issue within the taxing districts' overall claim should be foreclosed from resolution. *See* Brief for Appellee (Taxpayer) at 14-16 (asserting in general terms that the predicates for collateral estoppel have been met). For this reason, we view the claim and the legal issue at the heart of this litigation, namely, whether the Property was correctly accorded 72% tax-exempt status, as one and the same.

That being the case, there is little distinction between the two preclusive doctrines in terms of whether they pertain in the present context. As discussed, the same types of considerations which underlie *res judicata* also form the basis for collateral estoppel. *See, e.g.*, *Shaffer v. Smith*, 543 Pa. 526, 531-32, 673 A.2d 872, 875

(1996) (quoting *Allen v. McCurry*, 449 U.S. 90, 94, 101 S. Ct. 411, 415 (1980)). We find that issue preclusion under the rubric of collateral estoppel should not have been applied to defeat the School District's ability to obtain merits review of its substantive arguments in the intermediate court.

## IV. Inconsistent judgments

Taxpayer's final contention is that appellate review in the School District's case was properly foreclosed because any ruling by the Commonwealth Court other than an affirmance of the county court's order would lead to an untenable result. Taxpayer's theory is that such a ruling would conflict with the final order in the City's case, which affirmed the Board's assessment of the Property's at $267,250. Taxpayer maintains that such a conflict would be "irreconcilable." Brief for Appellee (Taxpayer) at 8, 13, 18. In this respect, Taxpayer quotes the Commonwealth Court's decision, in which the court stated that if two taxing districts were to use differing assessed values for the same property, an "absurd result" would arise which would be contrary to Section 1922(1) of the Statutory Construction Act, as a property can only have a single assessment. *See Coatesville*, 216 A.3d at 544 (citing 1 Pa.C.S. §1922(1) (reflecting a presumption that the General Assembly "does not intend a result that is absurd, impossible of execution or unreasonable")), *quoted in* Brief for Appellee (Taxpayer) at 13.

The Assessment Law contemplates that the assessed value of a property exists as a single figure appearing on the county assessment rolls, which is maintained by the county assessment office. *See* 53 Pa.C.S. §§8802, 8831(c)(4), 8841, 8846, 8847(a). Assessment appeals are designed to give interested parties, such as the property owner and any affected taxing districts, an opportunity to challenge the property's assessment if they believe it to be in error, *see* 53 Pa.C.S. §§8844(b), 8855, or non-uniform, *see id.* §8854(a)(9)(ii); PA. CONST. art. VIII, §1, or if they believe the

[J-72-2020] - 11

assessment was reached improperly such as via spot reassessment. *See* 53 Pa.C.S. §8843. While each taxing district may utilize a different millage rate to compute tax liability for the property, *see generally Chester-Upland Sch. Dist.*, ___ Pa. at ___ n.5, 238 A.3d at 1218 n.5 (discussing the computation of tax liability), the assessed value does not exist independently for each such district; again, it subsists as a single figure at the county level.

Thus, Taxpayer is correct to the extent it argues that inconsistent and irreconcilable assessments stemming from multiple court orders would represent an obstacle to the orderly functioning of the tax assessment scheme as designed by the Legislature. We find, however, that this type of result would not arise from an appellate court order in the School District's case which conflicts with the common pleas court's ruling in the City's case.

First, Taxpayer's irreconcilable-conflict theory does not depend on the School District having intervened, or otherwise entered its appearance, in the City's case. Therefore, accepting Taxpayer's argument would mean that, so long as one taxing district elects not to appeal a ruling issued by the common pleas court, no other taxing district may appeal from a common pleas court order in its own, independent litigation regarding the same property. A result along those lines, however, would be contrary to the express terms of the Assessment Law. *See* 53 Pa.C.S. §8854(b) ("The board, or any party to the appeal to the court of common pleas, may appeal from the judgment, order or decree of the court of common pleas.").

Additionally, when a board of assessment appeals, a county court, or an appellate court reaches a final determination as to the assessment of a property, such a ruling is mandatory with regard to the county assessment office's administration of the assessment rolls. And as noted, it is the figure contained in the assessment rolls that is

used by each taxing district as the basis for computing the tax due and owing to that district for the subject property in a given tax year.

With the above in mind, we note further that Pennsylvania's appellate courts have authority to modify, vacate, or reverse any order brought before them for review, and to remand with instructions to the trial court. *See* 42 Pa.C.S. §706. Implicit in that authority – at least within the property-tax assessment arena where a single assessment figure is maintained on a countywide basis – is the ability to override any prior, inconsistent order in relation to the subject property's assessment issued in a different case, so long as the prior order was not issued by a court in a higher tier of Pennsylvania's unified judicial system. That being the case, if the Commonwealth Court eventually sets the Property's assessment at a figure other than $267,250, or if it again remands to the county court with instructions and *that* court sets the Property's assessed value at an amount other than $267,250 – or if this Court grants further review and does so – the latter ruling will supersede the earlier one filed by the common pleas court in the City's case. *Cf.* RESTATEMENT (SECOND) OF JUDGMENTS §15 ("When in two actions inconsistent final judgments are rendered, it is the later, not the earlier, judgment that is accorded conclusive effect in a third action under the rules of res judicata.").

Put differently, whether or not a final order in the School District's case expressly so states, the assessment figure ultimately reached in the School District's appeal will be mandatory in relation to the county assessment office, and this will be true notwithstanding any difference between that amount and the common pleas court's earlier (and now final) ruling in the City's case. Accordingly, we disagree with Taxpayer's contention that an irreconcilable conflict would follow from any ruling by the Commonwealth Court in the School District's case other than affirmance.

## V. Conclusion

For the reasons given, the judgment of the Commonwealth Court is vacated and the matter is remanded to that court for a merits disposition of the consolidated cross-appeals in this matter.

Justices Baer, Todd, Donohue, Dougherty and Mundy join the opinion.

Justice Wecht files a dissenting opinion.