640 A.2d 1276

Dulcina C. SMITH, Appellant,

v.

KING'S GRANT CONDOMINIUM, a condominium, Appellee,

v.

Mary Scott LLOYD, Edward Carey and Alice Carey, James F. Malloy and Lawrence W. Spencer, Additional Appellees.

Supreme Court of Pennsylvania.

Argued Sept. 23, 1993.

Decided May 2, 1994.

Henry E. Rea, Jr., Brandt, Milnes, Rea & Wise, Pittsburgh, for appellant.

Jay D. Glasser, Pietragallo, Bosick & Gordon, Pittsburgh, for King's Grant Condominium.

Warren Ferry, Pittsburgh, for Edward and Alice Carey.

William M. Conwell, Dickie, McCamey & Chilcote, Pittsburgh, for Lawrence Spencer.

Robert J. Donahoe, Manifesto & Donahoe, Pittsburgh, for Mary Scott Lloyd.

William D. Anthony, William D. Anthony & Associates, Pittsburgh, for James F. Malloy.

Before NIX, C.J., and FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY and MONTEMURO, JJ.

## *OPINION OF THE COURT*

FLAHERTY, Justice.

Smith sued the condominium association for damages which occurred when a sewer line backed up and caused sewage to come into her unit. At the close of her evidence, the trial court entered a compulsory nonsuit. Superior Court affirmed, 418 Pa.Super. 260, 614 A.2d 261, and this appeal was taken. For the reasons that follow, we affirm.

Smith owned a condominium unit in the King's Grant condominium plan. This condominium consists of approximately 250 units in eleven buildings. The number of units in the buildings varied so that some buildings had ten units, some twenty, and some thirty. Smith lived on the ground floor of a thirty-unit building.

Smith's unit was serviced by two separate sewer lines, one for the kitchen and one for the bathroom. Smith's unit, the two units above her, and the unit next to her all emptied into the same vertical pipes which ran through the building to the main sewer line below the building.

Smith left her unit on December 24, 1987 for the holidays. When she returned four days later, bathroom sewage had come up through the floor drain, the bathtub, the commode, and the bathroom sink and flooded her unit. There was extensive damage.

Between 1976 and December of 1987, Smith experienced more than twenty kitchen sink backups, some of which resulted in kitchen sewer water coming into her unit and causing damage. In other buildings, there were instances of bathroom sewer line clogging, which led to the association publishing the following notice in its newsletter:

## SEWER BACK–UPS

No sanitary napkins, tampons or disposable diapers are to be disposed of in the toilets. This causes restrictions in the main drain lines which then back sewer water up into the lower apartment units. Please dispose of these items prop-

erly. How would you like to get up in the morning or come home at night to this kind of mess? The people on the lower floors have experienced this and your cooperation is requested.

Although Smith's bathroom drains and floor drains never backed up prior to December, 1987, Smith complained over the years to two presidents of the condominium association about the damage which had been caused to her apartment when the kitchen lines backed up.

As a result of the December, 1987 sewage backup, Smith sued King's Grant Condominium, and the condominium association joined as additional defendants the other unit owners whose units were connected to the same vertical bathroom pipe as Smith.

In her complaint, Smith alleged that the damage to her apartment was caused by the condominium's negligence:

7. The sewage backup into the Plaintiff's condominium unit was caused by the negligence of the Defendant generally and in the following particulars:

A. In failing to maintain its sewer lines in a good and operable condition.

B. In failing to periodically clean its sewer lines.

C. In failing to inspect its sewer lines.

D. In failing to take action to maintain clear, sewer lines when the Defendant knew of the probability that the sewer lines would become clogged.

E. In failing to install a back-flow valve so as to stop the flow of sewage into the Plaintiff's condominium unit when the Defendant knew or should have known of the potential hazard.

F. In failing to protect the Plaintiff's condominium unit from sewage backup when the Defendant knew or should have known of the probability of sewage backup into the Plaintiff's unit.

The trial court granted the condominium's motion for a compulsory nonsuit on the grounds that plaintiff was unable to

show that a trespass occurred on her land from land owned or possessed by another, and on the grounds that plaintiff failed to show negligence on the part of defendants.

A plurality of Superior Court affirmed on the grounds that Smith failed to prove negligence under Restatement of Torts, Second § 364(c).[1] According to the court: "appellant introduced no evidence that the sewer line back-ups could have been alleviated by any steps or measures undertaken by appellee." 418 Pa.Super. at 264, 614 A.2d at 263. Further, a res ipsa loquitur theory was not available to Smith because she failed to eliminate herself or others as possible causes of the sewer blockage.[2] Finally, Superior Court held that although the doctrine of absolute nuisance "would appear to provide appellant [Smith] with a valid cause of action, we cannot ground a reversal of the trial court upon a cause of action which was not pleaded below." 418 Pa.Super. at 272, 614 A.2d at 267.

Judge Cirillo, dissenting, would have reversed the trial court and allowed the action to proceed under section 364, under a res ipsa loquitur theory, or under a theory of nuisance. Although the plurality determined that a cause of action in nuisance had not been pleaded, Judge Cirillo pointed out that after extensive pretrial discussion between the court and parties about the theories of liability which might apply to this case, the parties were on notice that any applicable theory would be considered. Thus, utilizing the theory of absolute nuisance, under which even the plurality would allow recovery, had it been properly pleaded, cannot be an unfair surprise.

Smith petitioned for allowance of appeal, and we granted allocatur.

Superior Court is correct in stating that recovery may be achieved in a case such as this on the basis of Restatement of Torts, Second, section 364 or on the basis of res ipsa loquitur,

1. This section of the restatement, "Liability of Possessors to Persons Outside of the Land," is set out infra.

2. Res Ipsa Loquitur, which is codified at Section 328 D of the Restatement of Torts, Second, is set out infra.

Restatement of Torts, Second, section 328 D. Section 364 provides:

LIABILITY OF POSSESSORS TO PERSONS OUTSIDE OF THE LAND.

TITLE A. LIABILITY FOR CONDITION OF LAND AND STRUCTURES THEREON.

§ 364. Creation or Maintenance of Dangerous Artificial Conditions.

A possessor of land is subject to liability to others outside of the land for physical harm caused by a structure or other artificial condition on the land, which the possessor realizes or should realize will involve an unreasonable risk of harm, if

(a) the possessor has created the condition, or

(b) the condition is created by a third person with the possessor's consent or acquiescence while the land is in his possession, or

(c) the condition is created by a third person without the possessor's consent or acquiescence, but reasonable care is not taken to make the condition safe after the possessor knows or should know of it.

Res ipsa loquitur is codified at Restatement of Torts, Second at Section 328 D:

(1) It may be inferred that harm suffered by the plaintiff is caused by negligence of the defendant when:

(a) the event is of a kind which ordinarily does not occur in the absence of negligence:

(b) other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence; and

(c) the indicated negligence is within the scope of the defendant's duty to the plaintiff.

(2) It is the function of the court to determine whether the inference may reasonably be drawn by the jury, or whether it must necessarily be drawn.

(3) It is the function of the jury to determine whether the inference is to be drawn in any case where different conclusions may reasonably be reached.

In the case of a claim under section 364(c), liability of possessors of land to persons outside of the land for creation or maintenance of dangerous artificial conditions, plaintiff is required to show, in part, that the condominium did not take reasonable care; and under section 328 D, res ipsa loquitur, that plaintiff and third parties are not causes of the harm alleged.[3] Smith failed to provide such proof. As indicated by Superior Court, Smith's trial counsel appeared to take the position that all he need prove was that the condominium maintained an artificial condition and that Smith was harmed by it:

> SMITH'S COUNSEL. Our theory of the case is they owe us an absolute duty not to put sewage on our property, the same as any neighbor owes that duty to an adjacent neighbor, not to put sewage, smoke, unusual whatever it is, onto somebody else's property.
>
> THE COURT. Is this how your complaint reads?
>
> CONDOMINIUM COUNSEL. No. Your Honor. His complaint reads negligence.
>
> SMITH'S COUNSEL. It sounds in tort....
>
> \*      \*      \*      \*      \*      \*
>
> THE COURT. Is there an amended complaint in here someplace?
>
> SMITH'S COUNSEL. No. That's the law of tort.

R.R. 191 A–194 A. It is apparent that Smith's counsel misapprehended the pleading requirements of his case. If he pleaded only negligence, he was required to prove negligence. He may not plead negligence, fail to prove negligence, and rely instead on another theory of recovery which was never pleaded.

---

**3.** As this court held in *Gilbert v. Korvette's Inc.,* 457 Pa. 602, 611, 327 A.2d 94, 99 (1974):

> Res ipsa loquitur is neither a rule of procedure nor one of substantive tort law. It is only a shorthand expression for circumstantial proof of negligence—a rule of evidence.

Finally, Smith relies on a theory of recovery grounded in absolute nuisance. Superior Court summarizes absolute nuisance as follows:

Under such a doctrine a plaintiff need only show that sewage from defendant's land has travelled onto plaintiff's land and that plaintiff has been injured thereby. Negligence need not be shown, liability being absolute.

418 Pa.Super. at 272, 614 A.2d at 267. Although the Superior Court plurality acknowledged that absolute nuisance would provide appellant with a valid cause of action, it declined to allow the claim on the grounds that it was not pleaded.

■ On June 4, 1990, during pretrial discussion, and after considerable discussion between the court and counsel the day before as to whether Smith's negligence theory was viable absent expert testimony as to what caused the overflow of sewage and what the condominium association should have done to prevent it, counsel for Smith stated that he wished to amend his complaint by adding a new paragraph as follows:

The defendant as the entity having possession of the sewer line and having the duty of operation, care, upkeep and maintenance of the common areas was negligent in permitting the sewer line to overflow in the plaintiff's property after it knew or should have known that this sewer line and other similar lines had in the past overflowed into units such as was owned by the plaintiff.

R.R. 295 A. In response to the court's question as to whether this count was intended to add a theory of strict liability, counsel for Smith stated:

Not strict liability as the court interprets strict liability. This is what the courts refer to as negligence.

R.R. 300 A. The court then denied the amendment on the grounds that it adds nothing to the complaint. We agree. If the proposed amendment is intended to sound in negligence, it adds nothing to what had been pleaded already. Had Smith not insisted that the amendment was an additional count in negligence, perhaps the courts below would have properly treated her proposed amendment as an inartful attempt to plead absolute nuisance, which is what seems to have been her

case from the inception.[4]  Having failed to plead a case in absolute nuisance or to amend her pleadings to state a case in absolute nuisance, it was not error to grant the motion for a compulsory nonsuit.

Affirmed.

LARSEN, J., did not participate in the consideration or decision of this case.

ZAPPALA, J., concurs in the result.

MONTEMURO, J., files a dissenting opinion which is joined by PAPADAKOS, J.

MONTEMURO, J., who was an appointed justice of this court at the time of argument, participated in the decision of this case in his capacity as a senior justice.

MONTEMURO, Justice, dissenting.

I respectfully dissent.  It has long been settled that a compulsory nonsuit can only be granted in cases where it is

---

**4.** Judge Cirillo, dissenting, summarizes an action in absolute nuisance as follows:

> Under the theory of absolute nuisance a defendant is held strictly liable for the offending activity, relieving the plaintiff of the burden of proving the defendant's negligence or intent to harm.  Prosser and Keaton on Torts, 5th ed., § 78 at 552 (1984).  The primary consideration in determining whether a condition constitutes an absolute nuisance is the relation of the objectionable activity to its surroundings.  *Id.*  The accumulation of sewage, when it flows onto the property of another, has long been held to be an absolute nuisance.

418 Pa.Super. at 277, 614 A.2d at 270.  As this court stated in *In re Haugh's Appeal*, 102 Pa. 42 (1883):

> [T]he privy vault of the defendant, Haugh, by its offensive percolations has rendered foul and unfit for use the water of the plaintiff's well.  This puts the defendant in the position of maintaining a private nuisance of a continuing character, which injures the property of his neighbor. . . .  [T]he right to have a privy is a right only so long as it is used without material injury to the property of others;  when its fetid contents begin to leak over upon the adjoining lands it becomes a nuisance and is actionable as such.  The plea of necessity fails to justify an act of this kind, for the proposition that one man should, *under any circumstances,* be permitted to deposit any part of his health-destroying filth in or upon his neighbor's premises, is simply absurd.

*Id.* at 44–45.  Emphasis added.

clear that a cause of action has not been established. The plaintiff must be given the benefit of all favorable evidence along with all favorable inferences of fact arising from that evidence. Any conflict in the evidence must be resolved in favor of the plaintiff. *Coatesville Contractors v. Borough of Ridley,* 509 Pa. 553, 506 A.2d 862 (1986). The majority today holds that even under this standard appellant has failed to establish a cause of action. I am unable to join such an opinion for I believe an examination of the record reveals that appellant has established a cause of action under res ipsa loquitur and absolute nuisance.

The doctrine of res ipsa loquitur is neither a rule of procedure nor one of substantive tort law. Rather, it is a shorthand expression for circumstantial proof of negligence, i.e. a rule of evidence. *Gilbert v. Korvette,* 457 Pa. 602, 611, 327 A.2d 94, 99 (1974). Res ipsa, as delineated in section 328 D of the Restatement (Second) of Torts, was adopted by this court in *Gilbert v. Korvette.* Section 328 D states,

(1) It may be inferred that harm suffered by the plaintiff is caused by negligence of the defendant when

(a) the event is of a kind which ordinarily does not occur in the absence of negligence;

(b) other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence; and

(c) the indicated negligence is within the scope of the defendant's duty to the plaintiff.

(2) It is the function of the court to determine whether the inference may reasonably be drawn by the jury, or whether it must necessarily be drawn.

(3) It is the function of the jury to determine whether the inference is to be drawn in any case where different conclusions may reasonably be reached.

Restatement (Second) of Torts, § 328 D (1965).

The majority rejects appellant's claim under res ipsa loquitur on the ground that she has failed to eliminate herself and

third parties as causes of the harm in question, as required by section 328 D(1)(b). This analysis, however, ignores the fact that under section 328 D(1)(b) a plaintiff is not required to exclude all other possible causes beyond a reasonable doubt. Rather, it is enough that he makes out a case from which the jury may reasonably conclude that the negligence was, more probably than not, that of the defendant. *Id.* at comment f.

If the sewer backup which occurred here was a single, isolated incident, I would agree with the majority that appellant has failed to meet this standard. Under the present facts, however, the sewer lines in the condominium complex in which appellant resided had backed up over twenty times prior to the incident giving rise to this case. When viewed in a light most favorable to appellant, I believe the sheer number and repetitive nature of these stoppages, which occurred in all the buildings of the condominium complex, indicate that the back-ups were not simply the result of carelessness on the part of individual residents, but rather were the result of negligence on the part of appellee. As stated by Judge Cirillo in his dissenting opinion in the Superior Court:

> Common sewer lines do not back-up and overflow into individual apartments with the documented frequency Smith experienced absent negligence, negligence either in failing to maintain the sewer lines properly or in failing to sue the developer for installing a defectively designed or constructed sewage removal system.

*Smith v. King's Grant Condominium,* 418 Pa.Super. 260, 282, 614 A.2d 261, 272 (1992) (Cirillo, J., dissenting). Thus, I feel appellant has sufficiently eliminated other possible causes and should be permitted to go to the jury under the theory of res ipsa loquitur.

I am likewise convinced that appellant has successfully established a claim under the theory of absolute nuisance. Under the theory of absolute nuisance a defendant is held strictly liable for the offending activity, relieving the plaintiff of the burden of proving the defendant's negligence or intent to harm. Prosser and Keaton on Torts § 78 (5th ed. 1984). I

agree with the majority that the Superior Court correctly summarized liability under this theory when it stated,

> Under such a doctrine a plaintiff need only show that sewage from defendant's land has travelled onto plaintiff's land and that plaintiff has been injured thereby. Negligence need not be shown, liability being absolute.

*Smith v. King's Grant Condominium,* 418 Pa.Super. at 273, 614 A.2d at 267. *See also In re Haugh's Appeal,* 102 Pa. 42 (1883); *Knaus v. Brau,* 107 Pa. 85 (1884).

In the case sub judice, the majority concedes that the sewer line in question was under the control of appellee (condominium association). Hence, the association could be held liable for the damage to appellant's home on the basis of absolute nuisance. The majority, however, declines to grant appellant relief under this theory on the ground that it was not properly pleaded. I am unable to join such a holding.

Although appellant may have mistakenly used the term negligence in her pleadings, it was apparent throughout the proceedings that appellant was in fact asserting a claim based on absolute nuisance. Examination of the record reveals that this misnomer appeared in pre-trial discussions in which the following remarks were made by appellant's counsel to the trial court:

> THE COURT: Well, your theory is negligence.
> MR. REA (appellant's counsel): Our theory of the case is they owe us an absolute duty not to put sewage on our property, the same as any neighbor owes that duty to an adjacent neighbor, not to put sewage, smoke, unusual whatever it is, onto somebody else's property.

(Notes of Testimony (N.T.) 6/1/90–6/4/90, p. 36). Also:

> MR. REA: If their pipe overflows into our unit, we have a right to recover for that, and I don't have to show what they could have done to prevent it.

(N.T., p. 39). And:

> MR. REA: I'm saying under the terms of the Restatement and every case I have found in Pennsylvania, that when someone invades your property, unless they have a right to

do it, they have to respond to me in damages for that invasion. It's the same as if you have two neighbors and if you have your sewer pipe leading out to your street, your sanitary sewer pipe leading out to your street, and that breaks and you flood the next door neighbor, you're responsible for that. I don't have to go into your pipe to find out why it broke. You owe me the duty not to put sewage onto my property.

(N.T., p. 40).

Such a mistake on the part of appellant's counsel would seem excusable in the present case, in which the correct theory under which to proceed was far from readily apparent, and indeed, until today had not yet been clearly articulated. As stated by the Superior Court:

The court and the parties below searched the Restatement (Second) of Torts in vain for the appropriate theory of tort to apply to the facts of this case. Their assay of tort law was quixotic because the theory of tort they were seeking exists more or less in an inchoate form.

*Smith v. King's Grant Condominium,* 418 Pa.Super. at 265, 614 A.2d at 263. In addition, appellant's failure to properly plead absolute nuisance properly is even more understandable in light of the fact that the confusion regarding the correct theory under which to proceed was compounded by the trial court's erroneous assertions that absolute nuisance was inapplicable because appellant was a "part owner" of the sewer line in question. (N.T. pp. 40–44).

Furthermore, this confusion regarding the correct legal theory under which to proceed had left all parties on notice that any applicable theory of tort would be considered. Thus, appellee cannot claim to have been prejudiced by unfair surprise if this court were to hold that appellant has established a cause of action on the basis of absolute nuisance. Indeed, it appears that appellee was well aware that appellant was actually pursuing a theory of strict liability, as evidenced by the following remark by defense counsel during pre-trial discussions:

MR. GLASSER (defense counsel): ... He's trying to divert you into a strict liability on one hand, saying no it's not strict liability, but then he's arguing it is.

(N.T., p. 32).

Under these circumstances, I would reverse the order of the Superior court, and hold that in addition to establishing a claim under res ipsa loquitur appellant has established a claim under absolute nuisance. The majority, however, chooses to deny appellant relief solely due to her counsel's misnomer. I am unable to agree with such a holding for it clearly elevates form over substance and in doing so forces appellant to bear the losses caused by a malfunctioning sewer system over which she had no control. Such a result is hardly in accord with our duty as a court of law to do justice, accordingly I dissent.

PAPADAKOS, J., joins in this dissenting opinion.