Shirley M. CAPPELLI and Jean E.
Bascome and Philip Falcone
and Anne Falcone, H/W,

v.

YORK OPERATING CO., INC. a/k/a York
International Corp. and Robert Forrest
and Associates and BCM Engineers, Inc.
a/k/a BCM Eastern, Inc.

Appeal of Philip FALCONE and
Anne Falcone, Appellants.

Shirley M. CAPPELLI and Jean E.
Bascome and Philip Falcone
and Anne Falcone, H/W,

v.

YORK OPERATING CO., INC. a/k/a York
International Corp. and Robert Forrest
and Associates and BCM Engineers, Inc.
a/k/a BCM Eastern, Inc.

Appeal of Jean E. BASCOME, Appellant.

Shirley M. CAPPELLI and Jean E.
Bascome and Philip Falcone
and Anne Falcone, H/W,

v.

YORK OPERATING CO., INC. a/k/a York
International Corp. and Robert Forrest
and Associates and BCM Engineers, Inc.
a/k/a BCM Eastern, Inc.

Appeal of Shirley M. CAPPELLI,
Appellant.

Superior Court of Pennsylvania.

Argued Nov. 25, 1997.
Filed April 16, 1998.

John A. Rothschild, Philadelphia, for Falcone.

Patrick C. Campbell, Bryn Mawr, for Bascone and Cappelli.

BCM Engineers, appellee, pro se.

Before McEWEN, President Judge, CAVANAUGH, J., CIRILLO, President Judge Emeritus, and TAMILIA, POPOVICH, JOHNSON, HUDOCK, FORD ELLIOTT and EAKIN, JJ.

FORD ELLIOTT, Judge:

Appellants, plaintiffs in the underlying negligence action, bring this appeal claiming trial court error in granting defendant BCM Engineer, Inc.'s ("BCM's") motion for summary judgment on statute of limitations grounds. We reverse.

In reviewing the grant of a motion for summary judgment, our standard of review is well settled; the trial court will be overturned only if there has been an error of law or clear abuse of discretion. *First Wisconsin Trust Co. v. Strausser*, 439 Pa.Super. 192, 197, 653 A.2d 688, 691 (1995) (citations omitted). Our review of the record is, however, plenary. *Keselyak v. Reach All, Inc.*,

443 Pa.Super. 71, 74, 660 A.2d 1350, 1352 (1995).

> Summary judgment shall be entered:
> ... if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Pa.R.Civ.P. 1035(b).[1] 'The record must be viewed in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.' Summary judgment may be entered only in cases where the right is clear and free from doubt.

*Hayward v. Medical Center of Beaver County,* 530 Pa. 320, 324, 608 A.2d 1040, 1042 (1992) (citations omitted). With these standards in mind, we set forth the relevant factual and procedural history.

Appellants Jean Bascome ("Bascome"), Shirley Cappelli ("Cappelli"), and Philip Falcone ("Falcone") were employed by the Transportation Department of the Radnor Township School District during the relevant time period, from 1984 to 1992. The Transportation Building in which they worked was constructed in 1984. Between 1984 and 1988, the school buses parked and garaged next to the building were gradually converted from gasoline to diesel fuel. By the middle of 1988, Bascome began experiencing recurring upper respiratory complaints, including hoarseness, congestion, difficulty breathing freely, and a dry sensation in the mouth and throat. (R.R. at 368a.) During the same time period, Cappelli began having difficulty staying awake at her desk, and started to have problems with her memory. (R.R. at 384a.) Both women complained to their supervisor, Falcone. As a result, the school district hired BCM to test the air quality in the building.

BCM submitted its first air quality survey of the transportation building on May 10, 1988. (R.R. at 237–245a.) The survey noted

a slightly elevated level of carbon dioxide, and made a few recommendations for improving air quality; however, the survey also indicated that symptoms and potential chronic health effects associated with the contaminants it measured were "not of any concern at this time." (R.R. at 244a.) When the afflicted employees continued to experience increasingly troublesome symptoms, however, the school district hired BCM to conduct additional surveys, in January 1990; July 1990; August 1990; August 1991; September 1991; and January 1992. A summary of these reports as they relate to the employees' health concerns follows: February 1990—"Sampling for airborne contaminants indicated concentrations were well below levels which may result in potential health effects." (R.R. at 254a); August 1990—"The results also indicate that sufficient fresh outdoor air is being supplied to dilute contaminants." (R.R. at 263a); October 1990—"Based on the fact that indoor air concentrations were less than outdoor concentrations of yeast and fungi, the potential for humidifier fever, hypersensitivity pneumonitis, asthma, and allergic rhinitis diseases to be manifested by any individual who is sensitive to saprophytic bioaerosois is essentially non-existent." (R.R. at 272a); September 1991—"A review of all the laboratory field notes, site surveys, and literature on of [sic] the health effects of the identified contaminants at the identified concentrations clearly indicates that the indoor air quality within the Transportation Building is acceptable and will not result in adverse health effects to the occupants." (R.R. at 305a.)

It was not until January 1992, following several days during which "exhaust from the diesel buses [had] been sensed in the office area" that BCM noted a "significant source of uncontrolled air infiltration around the perimeters of the mandoors through the office and lounge areas." (R.R. at 307a.) This report followed in the wake of a report prepared in March of 1991 by Honeywell Indoor

---

1. This Rule was repealed and a new rule promulgated effective July 1, 1996; however, the old Rule 1035(b) applies because of the date on which the trial court heard and decided the instant motion.

Air Quality Diagnostics.[2] In its preliminary report, Honeywell had already related the employees' symptoms to diesel engine exhaust contaminants from the buses running in the parking areas and/or maintenance bays, and made various recommendations to correct the problem. (R.R. at 343a–344a.)[3]

Meanwhile, by June of 1990, both Bascome and Cappelli began seeking medical treatment for their worsening symptoms. (R.R. at 378a, 390a.) Cappelli was diagnosed with asthmatic bronchitis or possible chronic obstructive pulmonary disease. (R.R. at 390a.) Falcone, who had no previous history of upper respiratory disease, also began to experience upper respiratory symptoms some time in 1989. (R.R. at 274a.) By January of 1990, during a particularly acute episode, the three employees were comparing symptoms. Over the next two years, Falcone's respiratory and pulmonary systems deteriorated rapidly. In March of 1991, he was diagnosed with "hypersensitivity pneumonitis" as a result of exposure to antigens. (R.R. at 290a–291a.) He also suffered from frequent sinus infections, which required surgery in May of 1992.

According to appellants' expert, Todd Environmental Consultants, Inc. ("Todd"), in the fall of 1992, the National Institute for Occupational Safety and Health ("NIOSH") conducted a health hazard evaluation of the three employees and the building. The evaluation, which was medically rather than environmentally oriented, mentioned diesel exhaust emission several times, and concluded that the three employees probably could not continue to use the office space and remain asymptomatic. (R.R. at 350a.)

On January 21, 1992, the three employees[4] filed personal injury actions, naming as defendants the building's architect, the company responsible for designing and installing the building's heating, ventilating, and air conditioning ("HVAC") system, and BCM. The cases were consolidated in May of 1992. Only the claim against BCM remains. On the eve of trial, in March of 1996, BCM filed its motion for summary judgment, claiming that the employees' actions were barred by the applicable statute of limitations. In support of its position, BCM cited *Cochran v. GAF Corp.*, 542 Pa. 210, 666 A.2d 245 (1995). By order entered April 18, 1996 the motion was granted, and the employees timely filed their appeal.

On appeal, the employees claim that the discovery rule prevented the statute of limitations from beginning to run until they were diagnosed with an illness which, at the earliest, occurred in June of 1990 for Bascome and Cappelli and April of 1991 for Falcone. (Appellants Bascome and Cappelli's brief at ——;[5] appellants Falcones' brief at 26–27.) If this were the dispositive determination, we would agree with the trial court and BCM that, based on our supreme court's analysis in *Cochran v. GAF Corp., supra*, the employees' claim would be time-barred. We find, however, that *Cochran* is factually inapposite because the defendant in our case, unlike the defendant in *Cochran*, is not the party alleged to have caused the initial injury. Before further addressing this important distinction, however, we set forth the relevant law.

In Pennsylvania, a cause of action for negligence is controlled by the two-year statute of limitations set forth in 42 Pa.C.S A. § 5524(2). " '[T]he statute of limitations begins to run as soon as the right to institute and maintain a suit arises; lack of knowledge, mistake or misunderstanding do not toll the running of the statute of limitations.' " *Hayward v. Medical Center of Beaver County, supra* at 324, 608 A.2d at 1042, quoting *Pocono International Raceway, Inc.*

---

**2.** The Honeywell report does not appear to be a part of the record certified to this court. This synopsis appeared in the report prepared by appellants' expert, Todd Environmental Consultants, Inc. ("Todd").

**3.** As already noted, even after Honeywell submitted its report in March of 1991, BCM continued to assert that "the indoor air quality within the Transportation Building is acceptable and will

not result in adverse health effects to the occupants." (R.R. at 305a.)

**4.** Falcone's wife Anne also brought a loss of consortium claim. For ease of discussion, however, we shall refer to the plaintiffs as the employees.

**5.** The pages of Bascome and Cappelli's brief are not numbered.

*v. Pocono Produce, Inc.*, 503 Pa. 80, 84, 468 A.2d 468, 471 (1983). "It is the duty of the party asserting a cause of action to use all reasonable diligence to properly inform himself of the facts and circumstances upon which the right of recovery is based and to institute suit within the prescribed period." *Hayward v. Medical Center of Beaver County, supra* at 324, 608 A.2d at 1042 (citation omitted).

Appellants claim, however, that the statute of limitations was tolled by the discovery rule.

> The discovery rule is a judicially created device which tolls the running of the applicable statute of limitations until that point when 'the plaintiff knows or reasonably should know: (1) that he has been injured, and (2) that his injury has been caused by another party's conduct.' The limitations period begins to run when the injured party 'possesses sufficient critical facts to put him on notice that a wrong has been committed and that he need investigate to determine whether he is entitled to redress.'

*Pearce v. Salvation Army*, 449 Pa.Super. 654, 658, 674 A.2d 1123, 1125 (1996) (citations omitted). Furthermore:

> [T]he discovery rule is an exception to the general rule that the statute of limitations begins to run as soon as the right to institute and maintain a suit arises. Therefore, one claiming the benefit of the exception bears the burden of establishing that she falls within it. As we stated in *Pocono* [*International Raceway v. Pocono Produce, supra* ]: 'Once the prescribed statutory period has expired, the party is barred from bringing suit unless it is established that an exception to the general rule applies which acts to toll the running of the statute.' *Id.* at 85, 468 A.2d at 471. Thus, it is the Appellant's burden to establish that she is entitled to the discovery rule exception.

*Cochran v. GAF Corp., supra* at 216, 666 A.2d at 248–49.

In order to meet this burden, appellants were required to establish that they acted with reasonable diligence in essaying to determine the fact of their injury and its cause. As the *Cochran* court opined:

> In *Baumgart* [*v. Keene Building Products Corp.*, 542 Pa. 194, 666 A.2d 238 (1995) ], the Opinion in Support of Reversal sets forth the definition of what constitutes reasonable diligence:
>
>> Reasonable diligence is just that, a reasonable effort to discover the cause of an injury under the facts and circumstance[s] present in the case. Long ago we recognized that '[t]here are few facts which diligence cannot discover, but there must be some reason to awaken inquiry and direct diligence in the channel in which it would be successful. This is what is meant by reasonable diligence.' *Deemer v. Weaver*, 324 Pa. 85, 90, 187 A. 215, 217 (1936) [other citations omitted]. Reasonable diligence is an objective, rather than a subjective standard. Under this standard, the plaintiff's actions must be evaluated to determine whether he exhibited 'those qualities of attention, knowledge, intelligence and judgment which society requires of its members for the protection of their own interests and the interests of others.' *Burnside v. Abbott Laboratories*, 351 Pa.Super. 264, 292, 505 A.2d 973, 988 (1985) [other citations omitted]. Despite the objective nature of the reasonable diligence standard, '[i]t is sufficiently flexible, however, to take into account difference[s] between persons and their capacity to meet certain situations and the circumstances confronting them at the time in question.' *Burnside*, 351 Pa.Super. at 292, 505 A.2d at 988 [other citations omitted]. Thus, this case law teaches that a plaintiff is not under an absolute duty to discover the cause of his illness. Instead, he must exercise only the level of diligence that a reasonable man would employ under the facts and circumstances presented in a particular case.

*Cochran v. GAF Corp., supra* at 217, 666 A.2d at 249, quoting *Baumgart v. Keene Building Products Corp., supra* at 207, 666 A.2d at 244 (opinion in support of reversal) (other citations omitted). Finally, the *Cochran* court instructs:

Where the issue involves a factual determination regarding what constitutes a reasonable time for the plaintiff to discover his injury and its cause, the issue is usually for the jury. This is the general rule we set forth today. However, we also recognize the well established principle that where the facts are so clear that reasonable minds cannot differ, the commencement period may be determined as a matter of law.

*Id.* at 215, 666 A.2d at 248 (citations omitted).

 With the applicable law in mind, we turn to our analysis of the case before us. It is critical to remember who the defendant is in this case. Unlike *Cochran* and other cases in which the defendant is the party alleged to have caused the initial injury, *see Cochran v. GAF Corp., supra* ; *Baumgart v. Keene Building Products Corp., supra; White v. Owens–Corning Fiberglas Corp.,* 447 Pa.Super. 5, 668 A.2d 136 (1995), *appeal denied,* 546 Pa. 648, 683 A.2d 885 (1996); *Ingenito v. AC & S, Inc.,* 430 Pa.Super. 129, 633 A.2d 1172 (1993) *(en banc), appeal denied,* 542 Pa. 671, 668 A.2d 1133 (1995), *the defendant in this case was merely hired to determine the cause of the employees' illnesses after the employees complained to their supervisors.* The employees do not allege that BCM

caused their illnesses; *rather, they allege that BCM's negligent inspection of the HVAC system and negligent investigation into the cause of their illnesses allowed their illnesses to progress.* (R.R. at 50a, 67a, 82a.) Thus, the critical inquiry becomes the point at which the employees, in the exercise of reasonable diligence, should have known that BCM's alleged negligent inspections were causing them *additional* harm. In "creeping disease" cases,[6] such as the one before us, the statute of limitations begins to run "when the plaintiff knows, or reasonably should know: (1) that he has been injured, and (2) that his injury has been caused by another party's conduct." *Cathcart v. Keene Industrial Insulation,* 324 Pa.Super. 123, 135–36, 471 A.2d 493, 500 (1984) *(en banc ).* Under this test, in order for a claim to accrue *against BCM,* the employees were required to know (1) that they had been injured and (2) that their injuries had been caused *by BCM's conduct. Id.* at 135–36, 471 A.2d at 500. Clearly, the employees would not suspect that they had been injured by BCM's conduct until their symptoms persisted or increased despite BCM's continuing assurances to the school district that the building's air quality was acceptable.[7]

---

**6.** A creeping disease is one that results from continuous exposure to a hazardous substance. *Anthony v. Koppers Co., Inc.,* 284 Pa.Super. 81, 91, 425 A.2d 428, 434 (1980), *reversed on other grounds,* 496 Pa. 119, 436 A.2d 181 (1981). "These cases have been called 'creeping disease' cases, for it is difficult to determine at what point the exposure caused the disease, and after the disease has been contracted, to discover its cause." *Id.*

**7.** The dissent asserts that we are reversing the trial court on a theory the employees allegedly did not present to that court for review or to this court on appeal. (Dissenting opinion, 4/16/98 at 490–491, Cavanaugh, J., dissenting.) Our review of the record indicates, however, that the employees alleged this theory from the beginning. For example, in their complaints, the employees alleged that BMC was negligent, *inter alia,* in failing to warn the employees of the defective HVAC system. (R.R. at 161a, 186a.) They also alleged that the employees, relying on BCM's assurance that the building's air quality was safe, continued to work in the building, and that their symptoms increased in severity and frequency. (R.R. at 155a–156a, 178a–179a.) Furthermore, the employees' various medical reports support the theory we set forth. Dr. Ernest McKenna,

Jr., for example, opined, "It is my medical opinion that had [Shirley Cappelli] been withdrawn from the exposure at her job *or if the exposure had been eliminated from her environment early on,* she would not be in the difficult situation she finds herself in today." (R.R. at 391a. (emphasis added).) Finally, in their briefs to this court, the employees argue, *inter alia,* that "applying the second part of the *Cathcart* test, [the employees] could not have known that [their] injury was, in fact, caused by BCM's conduct until at the earliest, June of 1990 [or April of 1991] ... since BCM continued to report that there was nothing wrong with [the employees] and that there was no problem caused by exposure to diesel fumes." (Bascome and Cappelli's brief at , Falcones' brief at 27.) The dissent opines, however, that we are fashioning a "dual statute of limitations" theory, which the employees did not articulate. We disagree. The employees had no reason to articulate such a theory because when BCM filed its motion for summary judgment, it was the only defendant; hence, the only statute of limitations before the trial court was the one relevant to the employees' claim against BCM. We thus find that the employees adequately argued the theory on which we reverse, and, as a result, that BCM has suffered no unfair surprise.

■ An analogy is helpful to appreciate the distinction. Patient brings a medical malpractice claim against Surgeon A, who performed surgery on his leg, and Surgeon B, who tells Patient the pain in his leg is a normal consequence of the surgery. Later, Surgeon C informs Patient that the surgery was improperly performed, and that Patient's leg will have to be amputated due to the delay in remedying the negligent surgery. Patient settles his claim against Surgeon A, and proceeds against Surgeon B. Under these facts, *with regard to Patient's claim against Surgeon B*, we would not ask when Patient knew or had reason to know his leg was injured and the cause of the injury, which, under *Cochran*, probably would have been some time before he saw Surgeon B.[8] We would only look to Patient's relationship with Surgeon B, and would find that the statute of limitations began to run when Patient first visited Surgeon B and he failed to diagnose the cause of the pain. A question of fact would remain, however, as to when Patient knew, or by the exercise of due diligence should have known, that Surgeon B misdiagnosed the cause of his pain, and that this misdiagnosis was causing Patient further harm. As the supreme court stated in *Cochran, supra,* "Where the issue involves a factual determination regarding what constitutes a reasonable time for the plaintiff to discover his injury and its cause, the issue is usually for the jury. This is the general rule we set forth today." *Cochran v. GAF Corp., supra* at 215, 666 A.2d at 248.

Applying this analysis to the facts before us, we find that the trial court committed an error of law, because it framed the issue in terms of when the employees knew or should have known by the exercise of reasonable diligence that they were injured and that *the building's ventilation system caused their injury.* (Trial court opinion, 7/16/96 at R.R. 424a.) If that were, in fact, the issue before us, we would agree with the trial court that under *Cochran, supra,* the employees' claim would be time-barred because they clearly suspected the building's ventilation system was causing their injuries when they started complaining in 1988. When we frame the issue in terms of a claim against BCM, however, we must shift the focus of our analysis from the ventilating system to BCM's conduct. We note first that in a usual case, the statute of limitations would begin to run at the time of BCM's first inspection on May 10, 1988. Nevertheless, applying the discovery rule, we observe that the employees would have had no reason to question the quality of this inspection until they realized at some point that implementation of BCM's recommendations had failed to alleviate the employees' symptoms, and, in fact, that their symptoms were growing worse.[9] In determining the point at which such a realization might occur, we are mindful that BCM was not called back to re-inspect the building until January of 1990, following an incident on January 23, 1990, during which all three employees experienced acute symptoms. (Affidavit of Falcone, R.R. at 221a.) After that incident, the employees' complaints re-

8. In *Cochran*, Mrs. Cochran filed a complaint on September 27, 1985, alleging that her husband had been totally disabled by carcinoma of the lung and asbestosis as a result of his exposure to asbestos-containing products manufactured by the defendant companies. The defendant companies filed a motion for summary judgment, claiming that Mrs. Cochran's action was time-barred because Mr. Cochran knew or should have known that his lung cancer was asbestos related in June of 1981, when he was first diagnosed with lung cancer. At that time, Mr. Cochran had been smoking one and one-half packs of cigarettes daily since 1947. As a result of the diagnosis, he quit smoking: asbestos was not mentioned as a cause of his lung cancer. *Cochran v. GAF Corp., supra* at 212–16, 666 A.2d at 247–48. In March of 1985, Mr. Cochran was again admitted to the hospital following chest x-rays, at which time his exposure to asbestos was

mentioned for the first time. When he was released, he contacted an attorney, who arranged for a physician to review the tissue slides taken in 1981 and 1985. The physician concluded that both carcinomas were related to asbestos exposure based on asbestos bodies contained in the pathology material from both sets of slides. *Id.* The *Cochran* court agreed with the trial court that Mr. Cochran, *who had not inquired at all into the cause of his illness,* had not exercised reasonable diligence as a matter of law. *Id.* at 216, 666 A.2d at 249.

9. A delay in coming to this realization could further be affected by the fact that the air quality in the building varied from day to day, time of day to time of day, and season to season. (R.R. at 351a.)

sulted in BCM's being called back to re-inspect the HVAC system in July 1990; August 1990; August 1991; September 1991; and January 1992. Applying the discovery rule analysis set forth *supra*, we must ask at what point there was "some reason to awaken inquiry and direct diligence in the channel in which it would be successful[ ]" *in discovering that BCM's reassurances were inaccurate and were causing further injury. Cochran v. GAF Corp., supra* at 216, 666 A.2d at 249, quoting *Baumgart v. Keene Building Products Corp., supra* at 206, 666 A.2d at 244 (opinion in support of reversal) (other citations omitted).

In asking this question, we must keep in mind that "[r]easonable diligence is an objective, rather than a subjective standard ..." under which "the plaintiff's actions must be evaluated to determine whether he exhibited 'those qualities of attention, knowledge, intelligence and judgment which society requires of its members for the protection of their own interests and the interests of others.'" *Cochran v. GAF Corp., supra* at 217, 666 A.2d at 249, quoting *Baumgart v. Keene Building Products Corp., supra* at 207, 666 A.2d at 244 (opinion in support of reversal) (other citations omitted). Nevertheless, we must also keep in mind that reasonable diligence " 'is sufficiently flexible ... to take into account difference[s] between persons and their capacity to meet certain situations and circumstances confronting them at the time in question.'" *Cochran v. GAF Corp., supra* at 217, 666 A.2d at 249, quoting *Baumgart v. Keene Building Products Corp., supra* at 207, 666 A.2d at 244 (opinion in support of reversal) (other citations omitted). "The polestar of the Pennsylvania discovery rule is not a plaintiff's actual acquisition of knowledge but whether the information, through the exercise of due diligence, was knowable to the plaintiff. Failure to make inquiry when information is available is failure to exercise reasonable diligence as a matter of law." *Ingenito v. AC & S, Inc., supra* at 133-35, 633 A.2d at 1174-75 (citations omitted).

Viewing the record before us in the light most favorable to the employees as the non-moving parties, and resolving all doubts against BCM as the moving party, *White v. Owens–Corning Fiberglas Corp., supra* at 16, 668 A.2d at 142, we cannot say that no two reasonable minds could differ as to whether the employees exercised due diligence in discovering that their injuries were continuing as a result of BCM's failure to discover the air quality problem. The record supports the employees' allegations that, unlike the plaintiff's decedent in *Cochran v. GAF Corp., supra*, who, according to our supreme court, did nothing to determine the cause of his illness, the employees in this case did make inquiry: they sought medical advice and persisted in their complaints to their supervisor. As a result of those complaints, BCM was hired to conduct repeated air quality surveys, thus reassuring the employees that the building's air quality was acceptable. When their symptoms persisted, the employees continued to complain until finally, in February of 1991, Honeywell was hired to evaluate the building's HVAC system. The Honeywell report indicated for the first time that the employees' illnesses were caused by diesel engine exhaust contaminants. (R.R. at 343a.) We therefore do not have a case in which "[f]ailure to make inquiry ... is failure to exercise reasonable diligence as a matter of law." *Ingenito v. AC & S, Inc., supra* at 133-35, 633 A.2d at 1174-75 (citations omitted).

We thus find the facts before us analogous to the facts in *Hayward v. Medical Center of Beaver County, supra*, a case in which part of appellant Hayward's lung was removed when his doctor misdiagnosed his condition. Hayward relied on his doctor's assurances that the surgery was, nevertheless, medically necessary, and only discovered it was not when a second doctor so informed him. *Id.* at 325, 608 A.2d at 1043. The *Hayward* court concluded that a jury could "very well find that [Hayward] reasonably should have investigated the need for the surgery at the time that he was informed of the misdiagnosis...." *Id.* Nevertheless, the *Hayward* court also concluded that a jury could just as well find that Hayward acted reasonably by not investigating further, instead relying on his doctor's assurance that the surgery was necessary. *Id.* As the *Hayward* court

opined, "Because reasonable minds could differ as to when [Hayward's] injury was ascertainable, a jury question is presented, and therefore, summary judgment is not appropriate." *Id.*

We find that the case before us, like *Hayward*, falls under the general rule set forth in *Cochran v. GAF Corp., supra:* "Where the issue involves a factual determination regarding what constitutes a reasonable time for the plaintiff to discover his injury and its cause, the issue is usually for the jury." *Cochran v. GAF Corp., supra* at 215, 666 A.2d at 248. A jury could find that the employees acted reasonably given " 'their capacity to meet certain situations and circumstances confronting them at the time in question.' " *Id.* at 217, 666 A.2d at 249, quoting *Baumgart v. Keene Building Products Corp., supra* at 207, 666 A.2d at 244 (opinion in support of reversal) (other citations omitted).

A jury could determine that the employees lacked authority to conduct an independent inspection of the building, or to take any action other than to complain to their supervisors, as they did, or to quit their jobs. A jury could also find that BCM's inspections and recommendations lulled the employees into believing that the air quality in the building was not the cause of their illnesses. Finally, a jury could find that the employees had no basis upon which to question the accuracy or adequacy of BCM's 1988 air quality survey until they again experienced acute symptoms on January 23, 1990, or until Honeywell submitted its report in March of 1991.

As a final matter, we must address the employees' contention that BCM is equitably estopped from raising the statute of limitations defense.

> Where through fraud or concealment the defendant causes the plaintiff to relax his/her vigilance or deviate from his/her right of inquiry, the defendant is estopped from invoking the bar of the statute of limitations. *Molineux v. Reed,* 516 Pa. 398, 402, 532 A.2d 792, 794 (1987). The burden of proving such fraud or concealment, by evi-

> dence which is clear, precise and convincing, is on the [party seeking estoppel]. *Robbins & Seventko Orthopedic Surgeons, Inc. v. Geisenberger,* 449 Pa.Super. 367, ——, 674 A.2d 244, 249 (1996) (citation omitted).

Applying this standard to the facts before us, we do not find that the employees have met their burden. Certainly the jury can consider BCM's air quality surveys, in which the transportation building's indoor air quality was found to be acceptable, as evidence in determining when the employees reasonably should have known that BCM's inadequate inspections placed them at risk for further injury. Nevertheless, we do not find that these surveys rise to the level of fraud or active concealment for several reasons. First, BCM lacked any motive to conceal an air quality problem from the employees. *Cf. DeRugeriis v. Brener,* 237 Pa.Super. 177, 348 A.2d 139 (1975) (plaintiffs were actively misled by insurance agents, motorist, and motorist's father as to who was driving automobile that injured plaintiffs until after limitations period had run; motorist and his father were therefore estopped from raising limitations defense so that plaintiff could amend his complaint to name actual driver), *appeal dismissed,* 471 Pa. 103, 369 A.2d 1215 (1977). Second, BCM's surveys, while allegedly inadequate, did recommend various improvements to the building's HVAC system.[10] Thus, BCM was not actively concealing problems; rather, it was, at worst, negligently overlooking problems. *Cf. Colonna v. Rice,* 445 Pa.Super. 1, 664 A.2d 979 (1995) (dentist's failure to disclose the full extent of patient's gum disease and its remedies did not estop dentist from raising a limitations defense in a dental malpractice action for failure to inform or treat patient for gum disease), *appeal denied,* 544 Pa. 599, 674 A.2d 1065 (1996). Evidence of the allegedly inadequate surveys is thus more properly presented to the jury for its consideration of whether the employees exercised due diligence so as to toll the statute of limitations, and should not be used to estop BCM from raising the limitations defense at all.

---

10. BCM's August 24, 1990 report indicates that its previous recommendations had been implemented. (R.R. at 264a.)

For all of the foregoing reasons, we reverse the order of the trial court entering summary judgment on behalf of BCM and remand for proceedings consistent with this opinion.

Summary judgment vacated. Case remanded. Jurisdiction relinquished.

CAVANAUGH, J., files a Dissenting Opinion which was joined by CIRILLO, President Judge Emeritus, and TAMILIA, J.

CAVANAUGH, Judge, dissenting:

Appellee BCM was awarded summary judgment in the trial court and was the sole surviving defendant in lawsuit brought by the appellant plaintiffs who were all employed in the Radnor School District Transportation Building which was a new one-story structure having been built in 1984. About the same time, the District began converting its bus fleet to diesel fuel rather than gasoline. Buses were parked next to the building where appellants worked. I respectfully dissent from the majority disposition, as I would affirm the trial court's conclusion that appellant's claims are barred by the statute of limitations. I would do so on two bases.

First, I find that the reasoning adopted by the majority in its reversal is not supported by the pleadings or briefs in this case. The majority finds that application of the statute of limitations in this case is controlled by a determination that the applicable two year commencement period is fixed by ascertaining when BCM's tortious conduct occurred and further finds that there is a jury issue to be decided under discovery rule principles. BCM, an engineering firm, was retained to investigate the IAQ (indoor air quality) at the subject premises. Using the majority's apt hypothetical, the theory of BCM's responsibility may be described as a failure to diagnose (the presence of harmful substances in the environment). The majority then applies the discovery rule to suggest that the issue is when the employees may be charged with knowledge that their injuries were "continuing" as a result of BCM's failure to discover (or diagnose) the presence of harmful sub-

stances. It is then decided that this presents an issue for jury determination.

The concept that this lawsuit involves dual statute of limitations initiation dates—one for those who allegedly caused the disease, another for BCM who allegedly, by reason of its faulty IAQ, caused the injuries to persist, is not supported by the asserted claims of the appellants. I do not find the dual statute distinction set forth in the pleadings nor is it articulated in appellants' briefs on appeal, even though new briefs were prepared for reargument en banc. While the theory is clearly expressed by the majority, my examination of the pleadings and briefs do not disclose reasoned assertion or argumentation of the dual statute theory by the parties. It is fundamental to our appellate review that issues not raised or argued, are deemed waived. *In re Appeal of Municipality of Penn Hills*, 519 Pa. 164, 546 A.2d 50 (1988); *Vernon v. Stash*, 367 Pa.Super. 36, 532 A.2d 441 (1987); *Bunt v. Pension Mtg. Associates, Inc.*, 446 Pa.Super. 359, 666 A.2d 1091 (1995); *Santillo v. Reedel*, 430 Pa.Super. 290, 634 A.2d 264 (1993); *Arthur v. Kuchar*, 546 Pa. 12, 682 A.2d 1250 (1996); *Smith v. King's Grant Condominium*, 418 Pa.Super. 260, 614 A.2d 261 (1992), *aff'd.* 537 Pa. 51, 640 A.2d 1276 (1994). *Foster v. Mutual Fire, Marine and Inland Ins. Co.*, 544 Pa. 387, 676 A.2d 652 (1996); *Murray v. Hamot Medical Center*, 429 Pa.Super. 625, 633 A.2d 196 (1993), *appeal denied*, 540 Pa. 632, 658 A.2d 796; *Kalenevitch v. Finger*, 407 Pa.Super. 431, 595 A.2d 1224 (1991).

It is true that an appellate court may *affirm* the decision of a trial court for reasons other than those proffered by the trial court. *McAdoo Borough v. Commonwealth, Pennsylvania Labor Relations Bd.*, 506 Pa. 422, 485 A.2d 761 (1984); *Williams v. Otis Elevator Co.*, 409 Pa.Super. 486, 598 A.2d 302 (1991). However, the majority *reverses* the trial court on a theory not raised in the trial court or argued on appeal. I would conclude that it is error to reverse a judgment of the trial court on a theory not presented to, or adjudicated in, the trial court, indeed, one which has not been articulated on appeal before this court.

Assuming, however, the propriety of the majority rationale, I would, nevertheless dissent since I believe that the trial court properly granted summary judgment under either statute of limitations theory.

We are instructed as to our standard of review that:

> A trial court's order granting summary judgment will not be reversed unless it is established that the court committed an error of law or clearly abused its discretion (citing cases)

*Cochran v. GAF Corp.*, 542 Pa. 210, 666 A.2d 245, 249 (1995).

*Cochran* further cautions us that:

—the discovery rule is an exception to the rule that the statute of limitations begins to run as soon as the right to institute and maintain a suit arises.

—one who claims benefit of the discovery rule, has the burden of establishing its applicability.

—the statute is *not tolled by mistake or misunderstanding.*

—diligent investigation may include obtaining further medical or legal assistance.

—a party must use reasonable diligence in ascertaining the cause of his injury.

*Cochran*, 666 A.2d at 248, 249.

Accepting the majority view that appellants claims against BCM must be for such losses as were incurred as a result of the prolongation of their maladies which can be traced to the deficient IAQ study done by BCM, we first observe that BCM reported its definitive study on May 10, 1988[1] and that the three appellants filed suit on January 21, 1992, over three years and eight months after the alleged faulty IAQ study.

As the trial court noted, it is abundantly clear that appellants had notice of an injury as early as the late 1980's. In fact, it was because of their symptomology that BCM was brought in to do the May, 1988, test.[2] (The BCM IAQ survey report initially states that the survey was done "to evaluate potential stressors that may have a potential to contribute to the expression of symptoms experienced by some employees"). The majority suggests that the cause was not discovered until an investigation by another firm in 1991 pinpointed diesel fumes as the offending substance. Since every history of this case discloses that the onset of appellants' symptoms were contemporaneous with the changeover to diesel fuel in buses which were approximate to the appellants' workplace, it is difficult to comprehend why due diligence would not have disclosed the apparent nexus, as well as the ineptitude of the BCM study well within the two years which the law allots.

Given, then, the presence of sufficient work-related symptomology by appellants to cause their employer to contract for IAQ studies and, further, given the easy discoverability of BCM's tortiously inaccurate IAQ study, it is abundantly clear that appellants, from May 10, 1988 forward, had a statutory two years to employ due diligence and whatever medical and legal advice and investigations were necessary to pursue their claims. Thus, appellants were alerted to determine A) a diagnosis of their illness; B) the likely cause of their illness[3] and, C) the role of BCM in prolonging their illness by reason of its faulty study.

---

1. BCM did later follow-up studies which are of no present consequence.

2. There is record evidence that all three appellants suffered relevant physical complaints in and about 1988.

3. All three appellants, in their complaints, rely upon a later study of the HVAC systems and, in all but verbatim identical averments, complain that:

> This environmental survey found contaminated areas trapped in the humidifiers with high concentrations of fungal antigents that include Cladosporium, Candida and Aureobasidium.
> The survey also found very poor ventilation as evidenced by trapped diesel fuel fumes, combustion contaminants in the building and poor air movement in the offices, as well as problems with airborne fiberglass.
> As a result of the above, Plaintiff has been caused to expend substantial sums of money for medical care, treatment and therapy, and has incurred various miscellaneous expenses, which expenses will continue indefinitely into the future.

Based upon the principles set forth by our supreme court in *Pocono International Raceway v. Pocono Produce*, 503 Pa. 80, 468 A.2d 468 (1983) and *Cochran v. G.A.F.* (*supra*), I would affirm the trial court conclusion that summary judgment is appropriately entered in favor of BCM.

Finally, I am in agreement with the majority in rejecting appellants' contention that BCM is estopped from raising the statute of limitations defense.